**Affirmed in Part, Reversed and Rendered in Part, and Opinion filed April 2, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00294-CV

---

**CITY OF GALVESTON, DOROTHY PALUMBO, CITY ATTORNEY AND STERLING W. PATRICK, DIRECTOR OF GRANTS AND HOUSING, Appellants**

**V.**

**CDM SMITH, INC., Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 13-CV-0844**

---

## O P I N I O N

When the legislature enacted chapter 271 of the Local Government Code, it loosened the immunity bar so "that all local governmental entities that have been given or are given the statutory authority to enter into contracts shall not be

immune from suits arising from those contracts."[1] In five issues, appellants City of Galveston, Dorothy Palumbo, and Sterling W. Patrick challenge the trial court's denial of their plea to the jurisdiction, contending that they are immune from suit in conjunction with claims arising from the City's contract with appellee CDM Smith, Inc.[2] Concluding the City's immunity has been waived as to CDM's breach of contract claim, we affirm the trial court's denial of the plea to the jurisdiction as to that claim. As to CDM's other claims, we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment granting the plea and dismissing those claims for lack of jurisdiction.

## *Background*

Congress enacted the Consolidated Security, Disaster Assistance, and Continuing Appropriations Act of 2009 to appropriate funds through the Community Block Grant Program (Program) for aid in disaster relief. Congress designated the United States Department of Housing and Urban Development (HUD) as the administering agency for Program funds. HUD allocated to the State of Texas over $1.3 billion to assist with the recovery from damages caused by Hurricane Ike. Approximately $160 million was allocated to the City to address housing damage. The City entered into a contract with CDM to act as the "Program Administrator."

The City and CDM have divergent views regarding the nature of their

---

[1] *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006) (citing House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005)).

[2] Although ultra vires claims cannot be brought against the state, which retains immunity, such claims are for all practical purposes against the state because they are brought against governmental officials acting in their official capacity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009). Accordingly, for ease of reference, we shall refer to the City when discussing issues raised by all appellants except when it is necessary to refer to appellants individually for clarity.

agreement. The City argues it is a "platform for further activities"; that through it, the City could authorize the Program Administrator to perform services for the City; and without such further authorizations, the parties had no obligations to provide or pay for services. CDM asserts that the agreement is a services contract requiring CDM to provide professional management and operational services to the City regarding the Program.

When CDM completed services for the City, CDM would submit invoices to the City, and the City would review the invoices for compliance with HUD and State requirements and then forward them to the responsible state agency for payment.[3] The agency would then release Program funds to pay for CDM's services.

The City fell behind on payments, and the parties executed a task order modification that was made part of the contract and required the City to process and submit invoices for payment within 15 days of receiving an invoice from CDM. CDM sued the City and Palumbo and Patrick, in their official capacities, after the City purportedly stopped submitting invoices for payment. CDM asserted claims for breach of contract, violation of the Texas Prompt Pay Act, and ultra vires actions of City employees, and sought a writ of mandamus for violation of the Texas Public Information Act, seeking documents relevant to CDM's claims.

### *Discussion*

The City argues it is entitled to immunity from suit because none of the potential theories of waiver of immunity asserted by CDM apply to the facts of this case. CDM asserts immunity has been waived under the following theories:

---

[3] The Texas Departments of Rural Affairs and Housing and Community Affairs were designated to administer the Program funds and develop an action plan in conjunction with addressing housing damage. The Texas General Land Office then took over some of these responsibilities.

3

(1) Local Government Code section 271.152, which waives governmental immunity from suit for a governmental entity that enters into a contract for services; (2) the City's execution of the contract was a proprietary, not governmental, function; (3) the Texas Prompt Pay Act, which CDM contends waives immunity for interest payments; and (4) governmental officials could be sued in their official capacities for actions outside of their authority and failures to perform ministerial acts, including missing deadlines under the contract and failing to submit invoices as required under the contract. CDM also contends it was entitled to sue the City for violations of the Public Information Act.

The City is a local governmental entity. *See Lubbock Cnty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 & n.4 (Tex. 2014); Tex. Loc. Gov't Code § 271.151(3)(A). Local governmental entities enjoy governmental immunity from suit, unless immunity is expressly waived.[4] *Church & Akin*, 442 S.W.3d at 300. Governmental immunity includes both immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Id*. A governmental entity that enters into a contract necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive immunity from suit. *Id*. Unlike immunity from liability, immunity from suit deprives the courts of jurisdiction and thus completely bars the plaintiff's claim. *Id*.

A suit asserting that a government officer "acted without legal authority" and seeking to compel the official "to comply with statutory or constitutional

---

[4] Sovereign immunity protects the State and state-level governmental entities, while governmental immunity protects political subdivisions of the State such as counties, cities, and districts. *Church & Akin*, 442 S.W.3d at 300. The two doctrines are otherwise the same, and courts often use the terms interchangeably. *Id*.

4

provisions" is an ultra vires suit. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Those suits are not barred by governmental immunity because they "do not attempt to exert control over the state." *Id*.

We review a plea challenging the trial court's jurisdiction de novo.[5] *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id*. If the issue is one of pleading sufficiency, the plaintiffs should be afforded the opportunity to amend unless the pleadings affirmatively negate jurisdiction. *Id*. at 227.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *See id*. at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id*. at 228. Under this standard, we credit evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *See id*. The defendant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id*. If the defendant discharges this burden, the plaintiff must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Id*.

---

[5] In reviewing a plea to the jurisdiction, we do not consider the merits of the underlying claim; we consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *See Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001); *see also Carlson v. City of Houston*, 309 S.W.3d 579, 582 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

## I. Waiver of Immunity for Contracts for Services

In its fourth issue, the City contends, with regard to CDM's breach of contract claim, that the City's immunity from suit was not waived under chapter 271 of the Local Government Code.[6] Under chapter 271, the legislature waived sovereign immunity as to local governmental entities that enter into contracts for goods or services for the purpose of adjudicating claims for breach of contract. Tex. Loc. Gov't Code §§ 271.151(2)(A), 271.152. Subsection 271.151(2)(A), in relevant part, defines the types of contracts subject to the waiver of immunity: "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id*. § 271.151(2)(A). The City argues that chapter 271 does not apply because the subject contract does not include an essential term regarding payment or provide for services to the City.

### A. Essential Terms of the Contract

The City argues the contract does not include an essential term of the parties' agreement because the City's payment obligation was contingent on receipt of funds from the State. CDM contends this argument has been waived because the City raised it for the first time on appeal. CDM further argues that the payment terms are spelled out in detail in the contract. Assuming without deciding that this is an issue implicating subject matter jurisdiction that may be raised for the first time on appeal, we nevertheless conclude that the contract contains the parties' agreement regarding payment in sufficient detail to establish that essential term of the agreement.

The City cites two cases in support of its argument that the contract does not

---

[6] We discuss the issues out of order for organizational purposes.

include the parameters for payment as an essential term. In the first case, ICI Construction provided repairs of damage caused to Orangefield Independent School District facilities by Hurricane Rita. *ICI Const., Inc. v. Orangefield Indep. Sch. Dist.*, 339 S.W.3d 235, 236-37 (Tex. App.—Beaumont 2011, no pet.). ICI argued that purchase orders, pay applications, checks, and admissions of the District's superintendent, when read together, constituted the essential terms necessary for the formation of a written contract between ICI and the District for the repair work. *Id*. at 238. The court concluded that these documents did not comprise the essential terms of the parties' agreement because itemized invoices provided to the District by ICI did not show the amount the District *agreed to pay* for the repairs and none of the documents showed which properties were to be repaired. *Id*. at 239-40.

In the other case, the City of Lubbock Water District leased property to be used as a lake marina, restaurant, gas station, and recreational facility. *Church & Akin*, 442 S.W.3d at 299. In holding that the lease was not a contract to provide goods or services to the Water District, the supreme court noted that chapter 271's waiver of immunity "will typically apply only to contracts in which the governmental entity agrees to pay the claimant for the goods or services that the claimant agrees to provide to the governmental entity." *Id*. at 304. The lease contained no terms in which the Water District agreed to pay the lessee for services. *Id*. at 305.

Here, by contrast, the contract identifies the maximum compensation to be paid to CDM ($23,028,023), the scope of work to be compensated, and the procedure for payment. The contract initially provided that payment was contingent on the City's receipt of funds. However, the original contract was later modified by the parties, altering the payment parameters. Under the modification,

7

payments for "completed milestones" were to be "processed and submitted" by the City to the responsible state agency within 15 days of receiving an invoice from CDM. Moreover, progress payments of the prior balance owed to CDM were to be made according to a specified schedule. Because the contract and its modification set forth the City's basic obligations with regard to payment, we conclude they include that essential term of the parties' agreement. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010) (noting written contracts stated essential terms because names of the parties, property at issue, and basic obligations were clearly outlined).

### B. Services Provided to the City

The City also argues that the contract was not for services to the City; rather its purpose was "to identify and direct funds to citizens whose homes were in need of repair due to damages suffered by Hurricane Ike." CDM argues that the contract identifies many services to be provided directly to the City, including "professional management and operational services"; assisting the City's Grants and Housing Department with Program design, the pre-application and application processes, "project development and implementation, bidding, pre-construction, construction/repair/rehabilitation and closeout"; and developing and completing a neighborhood master plan and housing market study for the City.[7]

Waiver of immunity is triggered by the mere act of entering into a contract for goods or services. *Partners W. Tex. Mun. Power Agency v. Republic Power*, *L.P.*, 428 S.W.3d 299, 308 (Tex. App.—Amarillo 2014, no pet.) (citing Tex. Loc. Gov't Code § 271.152). Chapter 271 does not define "services," but the supreme

---

[7] The neighborhood master plan included strategies to maintain desired features of neighborhoods. The housing market study included a collection and analysis of data to recommend to the City a housing strategy to meet current and future needs and an implementation strategy.

8

court has interpreted the term in this context as "broad enough to encompass a wide array of activities." *See Kirby Lake Dev.*, 320 S.W.3d at 839. It generally includes any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed. *W. Tex. Mun. Power Agency*, 428 S.W.3d at 309. The services provided need not be the primary purpose of the agreement. *Kirby Lake Dev.*, 320 S.W.3d at 839.

The City cites three cases in support of the argument that the contract does not provide for services to the City. *See Church & Akin*, 442 S.W.3d at 303; *City of El Paso v. High Ridge Const., Inc.*, 442 S.W.3d 660, 670 (Tex. App.—El Paso 2014, pet. filed); *E. Houston Estate Apartments, L.L.C. v. City of Houston*, 294 S.W.3d 723, 734 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Each case is distinguishable from the facts of this case.

In the first case, as set forth above, Church & Akin leased a marina from the Lubbock County Water Control and Improvement District. *Church & Akin*, 442 S.W.3d at 303. The lease prohibited Church & Akin from using the premises for any other purpose than as a marina without consent. *Id*. Church & Akin argued that by operating the marina it was providing a service to the Water District. *Id*. at 302. The supreme court disagreed because under the lease, the Water District did not contractually obligate Church & Akin to operate a marina—it only restricted Church & Akin from using the premises for a different purpose without consent.[8] *Id*. at 303. The court concluded, "When a party has no right under a contract to receive services, the mere fact that it may receive services as a result of the

---

[8] We note that the services provided by Church & Akin were to its customers and not to the Water District. *Church & Akin*, 442 S.W.3d at 303 ("[E]ven if we could construe the lease to include a contractual agreement to use the property as a marina, Church & Akin's provision of marina services to the Water District's constituents would not constitute the provision of such services to the Water District itself."). Here, as set forth below, CDM was required to provide services directly to the City.

contract is insufficient to invoke chapter 271's waiver of immunity." *Id*.

In the second case, the City of Houston loaned East Houston Estate Apartments funds, furnished by the federal government, to assist in the rehabilitation of an apartment complex. *E. Houston Estate Apartments*, 294 S.W.3d at 726. The Apartments argued that because the terms of the loan agreement and restrictive covenants restricted the amount of rent to be charged, they were providing low-income housing as a service to the City. *Id*. at 734. The First Court of Appeals disagreed, concluding that although the City would benefit in a general way from having the apartment complex refurbished, the loan agreement did not obligate the Apartments to provide any services directly to the City. *Id*. at 736. Instead, the benefit ran from the federal government to the Apartments, not to the City. *Id.*

In the third case, the El Paso Court of Appeals held that a contract between the City of El Paso and High Ridge Construction required High Ridge to provide services to the City. *High Ridge Const.*, 442 S.W.3d at 670. Although the primary purpose of the contract was to provide weatherization services to private citizens, High Ridge also was required to provide a warranty on its work to its clients and the City and indemnify and defend the City from any causes of action or claims arising from High Ridge's actions. *Id*. The court acknowledged that the weatherization services themselves did not provide a direct benefit to the City, but the warranty and indemnification provisions did, and thus immunity was waived under chapter 271.[9] *Id*. at 669-70.

In the first two cases, the governmental entity either did not receive—or was

---

[9] The City cites this case for the proposition that the weatherization services were not a service to the city, but asserts that the court "incorrectly determined" that High Ridge's provision of a warranty and indemnity were services to the city.

10

not entitled to receive—a direct benefit. In the third case, although the weatherization service did not benefit the City of El Paso directly, other provisions of the contract did. In this case, although the services provided under the agreement benefitted individual citizens of Galveston, the City also enjoyed direct benefits through CDM's providing management and operational services, assisting the City's Grants and Housing Department with the Program, and developing and completing a neighborhood master plan and housing market study that the City would own. We conclude the agreement in this case provides services to the City.

Many cases support our conclusion. The supreme court has held that services were provided to local governmental entities in the following instances: (1) developers' agreements with a third party to construct, develop, and bear all risk of loss or damage to sewer facilities provided services to city's water authority because developers were required to lease sewer facilities to the water authority, *see Kirby Lake Development*, 320 S.W.3d at 839; and (2) a contract of insurance between a fund member and a governmental entity fund provided services to the fund because fund members elected a governing board that resolved claim disputes, *see Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdiv. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006).

Our sister courts have reached similar conclusions. A contract for consultants to provide feasibility studies and financing options for providing a municipal power agency with electric energy provided services to the agency, *W. Tex. Mun. Power Agency*, 428 S.W.3d at 309; a development agreement required a real estate developer to provide services to a city by constructing a road, designing and constructing a turn lane, and working with the Texas Department of Transportation concerning location, alignment, design and construction of the lane, *Town of Flower Mound v. Rembert Enters., Inc.*, 369 S.W.3d 465, 473 (Tex.

11

App.—Fort Worth 2012, pet. denied); and a contract requiring San Antonio Water System to identify, pursue, and fund feasibility studies that subsequently became property of the Lower Colorado River Authority provided services to the River Authority, *City of San Antonio ex rel. San Antonio Water Sys. v. Lower Colo. River Auth.*, 369 S.W.3d 231, 235 (Tex. App.—Austin 2011, no pet.), *disagreed with on other grounds by Zachry Const. Corp. v. Port of Houston Auth. of Harris Cnty.*, No. 12-0772, 2014 WL 4472616, at *7 (Tex. Aug. 29, 2014).

Concluding that the City's agreement with CDM includes the essential term regarding payment and required CDM to provide services to the City, we conclude that the City's immunity from CDM's breach of contract claim was waived under chapter 271. Accordingly, we overrule appellants' fourth issue. Because of our resolution of this issue, we need not address the City's first issue regarding whether the City engaged in a proprietary function so as to waive its immunity from the contract claim.

We overrule appellants' fourth issue.

## II.    Claim for Interest under Prompt Payment Act

In its third issue, the City contends that the Prompt Payment Act, which requires political subdivisions to make timely payments for the purchase of certain services by contract and to make interest payments on past due amounts, does not provide a waiver of immunity. *See* Tex. Gov't Code §§ 2251.021, 2251.027. CDM argues that the City's immunity was waived under the Prompt Payment Act as to CDM's claims against the City for interest on overdue payments. We need not decide whether the Prompt Payment Act provides a separate waiver of immunity apart from chapter 271. We have already held that the City's immunity was waived under chapter 271. Chapter 271 allows a party to recover "interest as allowed by law, including interest as calculated under [the Prompt Payment Act]" on money

12

awarded in an adjudication against a local government entity for breach of contract under chapter 271. Tex. Loc. Gov't Code § 271.153(a)(4).

We therefore do not reach appellants' third issue.

### III.    Ultra Vires Breach of Contract Claims

In its second issue, the City asserts that CDM's ultra vires claims against Patrick are barred because CDM seeks retrospective monetary relief.[10] CDM argues that it seeks prospective relief compelling Patrick and Palumbo to correct violations of law in the future by "processing and sending CDM['s] invoices to the [Land Office]" and "carrying out the City's prior determination to approve for payment $6 million of CDM Smith's invoices."

We note that CDM's ultra vires claims were brought against both Patrick and Palumbo and CDM seeks a declaratory judgment that Patrick and Palumbo

> are acting outside of their authority and contrary to law by: 1) maintaining that [the task order modifying the contract] changed the [contract] from a "time and materials" contract to a "performance-based contract;" 2) refusing to approve the CDM . . . invoices and send them to the State for payment; 3) failing to comply with HUD directives; and 4) violating the Texas Public Information Act.

CDM also seeks a writ of mandamus to compel Patrick and Palumbo "to approve the CDM . . . invoices for payment and submit them to the [Land Office], to have CDM['s] invoices paid, and to promptly produce the requested documents as ordered by the Texas Attorney General."[11]

---

[10] The City also contends the claims are not for ultra vires acts because Patrick did not act without legal authority or fail to perform a ministerial act in reviewing CDM's invoices to determine whether CDM complied with regulations before submitting them for payment. We do not reach this issue because we conclude that CDM's claims are for retrospective monetary relief and thus barred by governmental immunity.

[11] Appellants' second issue appears to be directed only at the first three claims. We discuss CDM's claims under the Public Information Act in conjunction with appellants' issue

Suits to require state officials to comply with statutory or constitutional provisions are not prohibited by governmental immunity, even if a declaration to that effect compels the payment of money. *Heinrich*, 284 S.W.3d at 372. To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *Id*. Governmental immunity generally bars suit for retrospective monetary relief, but it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions. *Id*. at 369-70.

We first discuss CDM's ultra vires claims one through three, which relate to alleged breaches of contract by the City. We note that CDM has not alleged a statutory or constitutional provision that Patrick and Palumbo allegedly violated as to these claims. However, because we conclude that CDM's pleadings affirmatively negate jurisdiction in that CDM seeks retrospective monetary relief, we need not decide whether CDM properly alleged a violation of law.

In every suit against a governmental entity for money damages, a court must first determine the parties' contractual or statutory rights. *Id*. at 374. If the sole purpose is to obtain a money judgment, immunity is not waived. *Id*. As set forth above, this does not mean that a judgment involving the payment of money necessarily implicates immunity. *Id*. However, a plaintiff may not convert a claim for payment of a past due sum (damages) into a prayer for an injunction against refusing to pay the sum, for a declaration that the sum must be paid, or for an order reversing a governmental entity's decision not to pay. *Id*.

CDM cites *Heinrich* in support of its claims for relief as to its ultra vires

five below.

14

contract claims. However, the relief CDM seeks is distinguishable from that requested in *Heinrich*. In *Heinrich*, the plaintiff requested prospective injunctive relief regarding her claims as a widow over pension benefit payments. *Id*. at 369. The widow had been receiving monthly payments, but the pension fund reduced her payments by one-third when her son turned 23. *Id*. The widow brought ultra vires claims against the board members in their official capacities and sought declaratory and injunctive relief reinstating full pension benefit payments. *Id*. at 369–70. The monthly pension benefit payments were future recurring benefits, and the widow only sought to have them increased to their original amount. *Id*. at 377.

As *Heinrich* made clear, immunity for an ultra vires act is only a waiver with regard to bringing future acts into compliance with the law. *Id*. at 376; *see Multi-Cnty. Water Supply Corp. v. City of Hamilton*, No. 10-11-00037-CV, 2012 WL 579554, at *5 (Tex. App.—Waco Feb. 22, 2012, pet. denied) (mem. op.). A suit brought under the ultra vires acts waiver of governmental immunity thus cannot be used to obtain monetary relief for past damages from such acts. *Heinrich*, 284 S.W.3d at 374–76; *City of Hamilton*, 2012 WL 579554, at *5. Private parties cannot circumvent governmental immunity by characterizing a contract dispute seeking monetary damages as a declaratory-judgment claim. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 856 (Tex. 2002).

Here, the alleged breaches of contract—based on the City's refusal to approve CDM's invoices and submit them for payment in a timely manner—have already occurred and are not recurring because the contract has expired and CDM is no longer providing services to the City.[12] CDM seeks to compel the City to submit invoices to be paid by the Land Office. These claims are based on alleged

---

[12] The contract specified that it would terminate when the Program was completed but no later than December 31, 2011.

past breaches of contract—for which money damages are available—disguised as claims for prospective relief. *See, e.g., id.*, 74 S.W.3d at 856 (noting plaintiff could not confer jurisdiction on trial court by characterizing breach of contract claim as a declaratory judgment claim); *City of Hamilton*, 2012 WL 579554, at *5 (holding when plaintiff alleged only that governmental officials acted contrary to contract, claim was simply a breach of contract suit to enforce plaintiff's interpretation of the contract); *Tex. Logos, L.P. v. Tex. Dep't of Transp.*, 241 S.W.3d 105, 121-22 (Tex. App.—Austin 2007, no pet.) ("[A] declaratory claim that would be proper if asserted to compel the state to act within its statutory powers prospectively may nonetheless be barred by sovereign immunity to the extent it alleges past statutory violations that implicate a right to money damages."). Accordingly, we conclude these claims are for retrospective relief, and thus CDM's pleadings affirmatively negate jurisdiction as to these claims, as they are related to the City's alleged *past* breaches of contract.

Because CDM's pleadings affirmatively negate jurisdiction as to CDM's ultra vires contractual claims, we conclude the trial court lacked jurisdiction over them. We sustain appellants' second issue.

## IV. Public Information Act Claims

In its fifth and final issue, the City asserts that its immunity has not been waived as to CDM's claims under the Texas Public Information Act and that the Act provides for an action only against the governmental unit, not government officials. CDM brought ultra vires claims against Patrick and Palumbo for purported violations of the Act and a claim against the City seeking mandamus relief under the Act. We discuss both claims together. We need not decide whether a party may bring a claim against government officials under the Act because we conclude that immunity has not been waived as to any of CDM's claims under the

16

Act.

The Act waives immunity for requestors seeking to compel a governmental body to make information available for public inspection under certain circumstances. *City of El Paso v. Abbott*, 444 S.W.3d 315, 322 (Tex. App.—Austin 2014, pet. filed). As relevant here, a requestor who submits a request to a governmental body for inspection or copies of public information may file suit for a writ of mandamus compelling a government body to make information available for public inspection if the government body *refuses* to supply information that the attorney general has determined is public information subject to disclosure. Tex. Gov't Code §§ 552.003(6), 552.321. The Act does not define or otherwise qualify the word "refuse." *See Thomas v. Cornyn*, 71 S.W.3d 473, 485 (Tex. App.—Austin 2002, no pet).

CDM pleaded that Patrick and Palumbo failed to produce documents requested under the Act and seeks a writ of mandamus to compel them to "promptly produce the requested documents as ordered by the Texas Attorney General." CDM further pleaded that the City violated the Act by failing to produce documents it was required to produce pursuant to the Attorney General's ruling. CDM's pleading that the City purportedly withheld documents in violation of the Attorney General's order affirmatively demonstrates the trial court's jurisdiction over that claim.[13] *See Abbott*, 444 S.W.3d at 322; *see also* Tex. Gov't Code

---

[13] We note that CDM also complains that the City refused to produce documents it previously had agreed to produce. There is no waiver of immunity under the Act for a governmental body's refusal to produce documents it previously had agreed to produce, standing alone. The waiver only applies if a governmental body refuses (1) to request an attorney general's decision regarding whether the documents must be disclosed, (2) to supply public information, or (3) as relevant here, to supply information that the attorney general has determined is public information subject to disclosure. Tex. Gov't Code § 552.321. Accordingly, to the degree that CDM has brought a separate claim for the City's failure to produce documents "it previously had agreed to produce," CDM's pleading affirmatively negates that claim. *See Miranda*, 133 S.W.3d at 227 (noting party must be given opportunity to replead unless pleadings

17

§ 552.321. Thus, the City was required to submit evidence to controvert the jurisdictional facts. *See Abbott*, 444 S.W.3d at 322.

The City submitted evidence establishing the following undisputed facts. CDM made two requests for documents. Palumbo, as City Attorney, sought a ruling from the Texas Attorney General related to CDM's first request. *See* Tex. Gov't Code § 552.301(a) (requiring, in relevant part, governmental body that receives written request for certain information it wishes to withhold to ask for decision from attorney general regarding whether information must be disclosed). The City requested to withhold records responsive to the first request. The Attorney General issued a ruling that the information was public and subject to disclosure. Palumbo provided a cost estimate to CDM of $73,650, including a required deposit, to produce the documents. Palumbo alternatively offered to allow CDM to inspect the records in person for the lower cost of labor of assembling the records. CDM complained that the charge was excessive, but the Attorney General ruled that the City's charge was permissible.

CDM made its second document request, purportedly narrowing the scope of the original request. Palumbo again requested a ruling from the Attorney General on the responsiveness of the documents. The Attorney General ruled that the City was required to release some of the documents requested but could withhold other documents that were related to litigation and excepted from the disclosure requirement. *See* Tex. Gov't Code § 552.103(a), (c) (excepting certain information related to litigation from required public disclosure). Palumbo provided a cost estimate of $66,590, including a required deposit, for production of documents responsive to the second request. As before, Palumbo informed CDM that a less expensive option was available for CDM to inspect the records in person. As to

affirmatively negate jurisdiction).

18

each document request, Palumbo attested that CDM neither requested to view the documents in person nor paid the required deposits.

In sum, the City's jurisdictional evidence established that the City offered to produce the responsive documents for the cost of production, which in the first instance was approved by the Attorney General, or for the lesser cost of making the documents available for in-person inspection. We conclude that this was sufficient to conclusively establish that the City was not "refus[ing] to supply . . . information . . . that the attorney general has determined is public information" subject to disclosure. *See id.* § 552.321(a); *Abbott*, 444 S.W.3d at 324. By its plain terms, the Act's waiver of immunity for mandamus relief requires the City to have "refuse[d]" to supply public information. *See Abbott*, 444 S.W.3d at 324. In this context, "refuse" means "show or express a positive unwillingness to do or comply with." *See id*. (citing various dictionaries). Thus, under the plain language of section 552.321's waiver of immunity, a requestor must show that the governmental body is "unwilling" to supply public information. *Id*.

The City's jurisdictional evidence conclusively shows that it offered to produce the documents that were deemed responsive for the cost of production or to make them available for review. CDM has not presented any evidence to show there is a disputed material fact as to this issue. CDM complains that the City's cost estimate is too high but presented no evidence to this effect. The fact that the City asks to recover its costs for producing or making the documents available does not reflect that the City is unwilling to disclose the responsive information. *See id*. at 326.

We conclude that the City established as a matter of law that it did not refuse to supply information that the Attorney General determined was public information subject to disclosure and that CDM failed to raise a fact issue on that point. In that

19

connection, assuming without deciding that governmental officials may be sued for violations of the Act, CDM similarly failed to raise a fact question on whether Patrick and Palumbo violated the Act such that immunity would be waived for their ultra vires acts. *See Heinrich*, 284 S.W.3d at 372 (noting for immunity to be waived for ultra vires acts, a suit must allege and ultimately prove that the officer acted without legal authority or failed to perform a purely ministerial act.). Accordingly, the trial court lacked jurisdiction over all of CDM's claims under the Act.

We sustain appellants' fifth issue.

### *Conclusion*

Having concluded that chapter 271 of the Local Government Code provides a waiver of immunity as to CDM's breach of contract claim, we affirm the trial court's denial of the City's plea to the jurisdiction as to that claim. We reverse the trial court's denial of the plea as to CDM's ultra vires claims and claims under the Texas Public Information Act and render judgment dismissing those claims.


/s/ Martha Hill Jamison
   Justice


Panel consists of Justices Jamison, Busby, and Brown.

20