

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00091-CV

KENNETH CRAIG MILLER, Appellant

V.

GREGG COUNTY, TEXAS, Appellee

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2017-703-CCL2

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

O P I N I O N

Kenneth Craig Miller filed a suit under the Texas Public Information Act (TPIA) seeking a writ of mandamus to compel Gregg County to disclose certain information. *See* TEX. GOV'T CODE ANN. § 552.002 (West Supp. 2017). In response to this lawsuit, Gregg County filed a plea to the jurisdiction, which was granted by the County Court at Law No. 2 of Gregg County (CCL2). On appeal, Miller argues that the trial court erred in granting Gregg County's plea to the jurisdiction by resolving disputed jurisdictional facts. Miller also argues that the trial court erred in dismissing, with prejudice, claims for declaratory and injunctive relief, which were never included in Miller's petition. We determine that the CCL2 had jurisdiction of the TPIA mandamus action and that the plea to the jurisdiction was properly granted. However, we modify the trial court's judgment to omit references to causes of action and remedies not alleged or prayed for in Miller's petition. As modified, we affirm the trial court's judgment.

## I.     The CCL2 Had Jurisdiction Over Miller's TPIA Cause of Action

First, we must address the threshold question of whether the CCL2 had jurisdiction over this dispute. Miller's lawsuit was brought pursuant to Section 552.321(b), which provides a statutory remedy of mandamus to a requestor seeking to compel disclosure of public information. *See* TEX. GOV'T CODE ANN. § 552.321(b) (West 2012). That Section of the TPIA states, "A suit filed by a requestor under this section must be filed in a district court for the county in which the main offices of the governmental body are located." *Id.* However, Miller's suit was tried in front

2

of the CCL2, which is not a district court.[1]  Accordingly, we must first address whether the CCL2 had jurisdiction to address Miller's TPIA mandamus action.

"District courts are always the courts of exclusive original jurisdiction for mandamus proceedings unless the constitution or a law confers such jurisdiction on another tribunal."  *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 671–72 (Tex. 1995) (orig. proceeding) (citing TEX. CONST. art. V, § 8; TEX. GOV'T CODE ANN. § 24.011).  In 1995, the Texas Supreme Court cited to Section 552.321 and stated that it "does not specify which courts have jurisdiction over mandamus proceedings initiated to enforce the Act."  *Id.* at 672.  Thus, *Sharp* concluded that district courts would ordinarily have jurisdiction over Section 552.321 mandamus actions.

In 1998, the Corpus Christi Court of Appeals wrote that the TPIA does "not automatically confer jurisdiction on the county court."  *Martin v. Victoria Indep. Sch. Dist.*, 972 S.W.2d 815, 818 (Tex. App.—Corpus Christi 1998, pet. denied).  Thus, citing to *Sharp*, *Martin* recited the rule that a party must properly invoke a county court's concurrent jurisdiction to bring a TPIA suit for mandamus relief.  *Id*.  In deciding whether a statutory county court had jurisdiction to hear the requestor's TPIA suit, *Martin* looked to the provisions of Section 25.0003(a) of the Texas Government Code.  As applicable, that section provides,

> In addition to other jurisdiction provided by law, a statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court has concurrent jurisdiction with the district court in:

---

[1]We note that the district clerk's stamp appears on Miller's petition as a result of e-filing.  Yet, the case was assigned to the CCL2 from the outset.

> (1)   civil cases in which the matter in controversy exceeds $500 but does not exceed $200,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition.

TEX. GOV'T CODE ANN. § 25.0003(c) (West Supp. 2017). Martin concluded that that statutory county court lacked jurisdiction to grant mandamus relief under the TPIA where the plaintiff had alleged that the school district violated the TPIA by denying access to public records and failed to plead a sufficient amount in controversy. *Martin*, 972 S.W.2d at 819.

At the time *Sharp* and *Martin* were written, Section 552.321's provision requiring TPIA mandamus suits to be filed in district court did not exist. *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 552.321, 1993 Tex. Gen. Laws 583, 606; Act of May 29, 1995, 74th Leg., R.S., ch. 1035, § 24, 1995 Tex. Gen. Laws 5127, 5140 (amended 1999) (current version at TEX. GOV'T CODE § 552.321). Accordingly, during the time of *Sharp* and *Martin*, the TPIA "[did] not specify which courts ha[d] jurisdiction over mandamus proceedings initiated to enforce the Act." *Sharp*, 904 S.W.2d at 672. However, the Legislature amended Section 552.321 to include language requiring TPIA claims to be filed in district court. *See* Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 27, 1999 Tex. Gen. Laws 4500, 4511 (codified at TEX. GOV'T CODE § 552.321). This language created the filing of suit in district court as a "condition precedent" to bringing a TPIA mandamus action. *See* TEX. GOV'T CODE ANN. § 311.016(3) (West 2013).

The question we must resolve, then, is whether Section 552.321's requirement that suit be filed in district court trumps other provisions in the Texas Government Code allowing statutory county courts to have concurrent jurisdiction with district courts under certain circumstances. Chapter 25, subchapter C, of the Texas Government Code addresses specific grants of jurisdiction

4

to statutory county courts in some Texas counties. Gregg County statutory courts have, "[i]n addition to the jurisdiction provided by Section 23.0003 and other law, . . . concurrent with the district court, the jurisdiction provided by the constitution and general law for district courts, except that the county court at law does not have jurisdiction in capital felony cases." TEX. GOV'T CODE ANN. § 25.0942 (West Supp. 2017).

"We presume the Legislature is aware of relevant case law when it enacts or modifies statutes." *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (orig. proceeding). "A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it." *Id.* (quoting *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)). Under Chapter 25, subchapter C, of the Texas Government Code as it existed in 1999, Section 552.321 was amended to require TPIA mandamus suits to be filed in district court, and some statutory county courts could potentially have jurisdiction over such cases if the reasoning in *Martin* applied. *See, e.g.*, Act of May 24, 1991, 72d Leg., R.S., ch. 614, § 2, 1991 Tex. Gen. Laws 2233, 2233 (amended 1991, 2011) (current version at TEX. GOV'T CODE § 25.0052). Yet, the TPIA only imposed a filing requirement, but did not specifically state that only district courts could hear TPIA cases. If the Legislature intended to give exclusive jurisdiction to district courts over TPIA cases, it could have expressly done so. As an example, Section 221.002 of the Texas Election Code states, "Except as otherwise provided by this section, the district court has exclusive original jurisdiction of an election contest." TEX. ELEC. CODE ANN. § 221.002(a) (West 2010). The Legislature's omission of such language from the TPIA leads us to conclude that the requirement that TPIA cases be filed with the district court does not operate to deprive a statutory county court

having jurisdiction "concurrent with the district court" in civil cases of subject-matter jurisdiction in TPIA cases.  TEX. GOV'T CODE ANN. § 25.0942.

## II.     The Plea to the Jurisdiction Was Properly Granted

### A.     Factual and Procedural Background

#### 1.     Miller's Request

Miller filed a petition for writ of mandamus seeking the release of information that would allegedly "expose the depth and degree of the intimate relationships between former City of East Mountain Police Chief Betty Davis and Deputies of the Gregg County Sheriff's Office."  Miller's petition alleged that

> command level deputies in the Criminal Investigation Division gave former Chief Davis special treatment by:  1) failing to meaningfully act on criminal complaints against former Chief Davis and former City of East Mountain Mayor Neal Coulter; and 2) using the Sheriff's law enforcement authority unequally against Plaintiff, whenever former Chief Davis asked or encouraged Gregg County deputies to do so.

In order to substantiate these claims, Miller sent a written request under the TPIA requesting the following information:

1.     All phone call records for Neal Coulter . . . .
2.     All phone call records for Chief Davis . . . .
3.     All recordings for the Gregg County Sheriff's office including dispatch for the dates of May 3, 4, & 5, 2014 for the hours 7a.m. to 7p.m.
4.     All recordings including dispatch for the date of April 17, 2013 from 3p.m. to 10p.m.
5.     All recordings including dispatch for the date of September 8, 2013 from 12p.m. to 4p.m.
6.     The phone call logs for Tony Monsivais badge number 190 for the above dates if any portion of his phone is paid by public funds.

6

Gregg County supplied Miller with some documents responsive to his request. However, no phone call logs from patrol officer Monsivais were provided. Thus, only Monsivais' "phone call logs . . . for the above dates" are at issue.[2]

## 2. The TPIA Disclosure Requirements

"[I]t is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees." Tex. Att'y Gen. Op. OR2012-19216; *see* TEX. GOV'T CODE ANN. § 552.001(a) (West 2012). The TPIA's disclosure requirements apply to public information, defined as

> information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business:
>
> (1)     by a governmental body;
>
> (2)     for a governmental body and the governmental body:
>
>          (A)     owns the information;
>
>          (B)     has a right of access to the information; or
>
>          (C)     spends or contributes public money for the purpose of writing, producing, collecting, assembling, or maintaining the information; or

[2]Miller's pleading stated that he had previously submitted another request for public information asking for Monsivais' cell phone records "from January 1, 2013, through the date Gregg County complies with the request . . . ." He also testified that he delivered such a request to "[w]hoever was working the front desk." However, the appellate record only contains one written request for public information received by Gregg County. Mandamus lies only where "the governmental body refuses to request an attorney general's decision . . . or refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure." TEX. GOV'T CODE ANN. § 552.321. The duty to either (1) request a decision from the attorney general or (2) release information in the absence of such a request does not arise until a governmental body receives a written request. TEX. GOV'T CODE ANN. §§ 552.301–.302 (West 2012).

7

(3) by an individual officer or employee of a governmental body in the officer's or employee's official capacity and the information pertains to official business of the governmental body.

TEX. GOV'T CODE ANN. § 552.002 (West Supp. 2017). However, the TPIA excepts home telephone numbers of peace officers from its disclosure requirements. TEX. GOV'T CODE ANN. § 552.1175(b) (West Supp. 2017). The Texas Attorney General has also clarified that personal cell phone numbers of peace officers are excepted from disclosure requirements "provided a governmental body does not pay for the cellular telephone service." Tex. Att'y Gen. Op. OR2015-11054 (citing Open Records Decision No. 506 at 5–6 (1988)); *see* TEX. GOV'T CODE ANN. §§ 552.117–.1175 (West Supp. 2017)). Accordingly, a governmental body "must withhold . . . any home or personal cellular telephone numbers of peace officers," but "may only withhold the personal cellular telephone numbers . . . if the cellular telephone service is not paid for by a governmental body." Tex. Att'y Gen. Op. OR2015-11054.

### 3. Gregg County's Response

In response to Miller's lawsuit, Gregg County filed a plea to the jurisdiction on the basis that it had no documents responsive to Miller's written request for Monsivais' phone call logs. In support of its plea, Gregg County attached affidavits from Veronica Darden, Gregg County payroll supervisor in the Gregg County Auditor's Office, and Laurie Woloszyn, Gregg County Auditor.

Darden's affidavit recited that she had "been asked to review payroll documents to determine if cell phone records exist[ed] for Tony Monsivais if any portion of his phone was paid for by Gregg County on the following dates: April 17, 2013, September 8, 2013 and May 3–5, 2014," but found nothing. Darden further explained:

8

Prior to October 1, 2013, some officers with the Gregg County Sheriff's Office were provided with a cell phone by Gregg County which was paid for by Gregg County. The Gregg County cell phone program changed on October 1, 2013, and County cell phones were no longer provided to employees in the Sheriff's Office. After October 1, 2013, certain Gregg County employees could receive a stipend. Tony Monsivais was employed with the sheriff's office in May 2014, but he did not receive a stipend for his personal cell phone.[3]

Woloszyn's affidavit recited:

Based on my review of the Verizon bills for April 17, 2013[,] and September 8, 2013, Tony Monsivais did not have a designated cell phone number under his name with the Gregg County cell phone program. There were some unassigned numbers designated as patrol numbers on the Verizon bills that were not assigned to individual officers, but for April 17, 2013[,] and September 8, 2013, there were no calls at all listed on those bills.

. . . .

In conclusion, there are no cell phone logs or cell phone records for Tony Monsivais for April 17, 2013, September 8, 2013[,] or May 3–5, 2014. On April 17, 2013 and September 8, 2013, Tony Monsavais [sic] did not have a County issued cell phone in his name. Additionally, Tony Monsivais did not receive a stipend or allowance from Gregg County on May 3–5, 2014, or at any time in 2014.

Accordingly, Gregg County's plea stated (1) that based on Woloszyn's, "review of the Verizon bills for April 17, 2013[,] and September 8, 2013, Tony Monsivais did not have a designated cell phone number under his name with the Gregg County cell phone program," (2) that "Tony Monsivais did not have a Gregg County cell phone assigned under his name on April 17, 2013[,] or September 8, 2013, and he did not receive a stipend or allowance from Gregg County on May 3-5, 2014," and (3) that "Ms. Darden and Ms. Woloszyn confirm that there are no cell phone logs or cell phone records for Tony Monsivais for April 17, 2013, September 8, 2013[,] or

---

[3]Darden attached to her affidavit a copy of Monsivais' payroll records showing that he "did not receive a cell phone allowance or stipend in May of 2014, or at any time in 2014."

9

May 3-5, 2014[,] in Gregg County's possession." Miller filed no response to the plea to the jurisdiction prior to the hearing.

### 4. Evidence Taken at the Hearing

At the hearing, Woloszyn testified that there were no cell phone records on Monsivais' patrol cell phone for April 17 and September 8, 2013, and that Monsivais had no county issued phone in 2014 at all.[4] Thus, Woloszyn averred that no portion of Monsivais' phone was paid for by public funds. When asked about call logs, she testified, "A call log is different than a phone record. . . . **No one asked me to look for call logs**. They asked me to look for phone records. . . . I've never seen any call logs since the early 80's." Woloszyn clarified "[t]hat an officer isn't required every time he makes a phone call to pull out a sheet of paper and write down the day, the time, and the number he calls," because the same information was available from telephone records.[5]

Monsivais testified that he used two Verizon cellular phones from January 1, 2013, to October 1, 2013, and that one was for business use while the other was his personal cell phone. Monsivais further testified that he had always paid for his personal cell phone and that he was

---

[4]Woloszyn testified that for April and September, 2013, "[She] looked at the whole month." She continued, "It wasn't just that specific date. But the bill notated zero. . . . There is no activity at all on those [patrol] phones."

[5]Although we need not focus on Miller's alleged first request, which Gregg County maintained it never received and our appellate record does not contain, we note that Woloszyn testified (1) that Monsivias did not have a county issued phone in 2014 and,

> [F]or '13, we have cell phone records for listed officers except for patrol. And patrol had phones, but there was no usage on the phones.
>
> I couldn't tell you where they were, whether they were shut off in the glove box. I don't know. But they were not -- patrolmen were not using those five phones.

10

never required to maintain call logs. Chuck Williford, chief deputy of the Gregg County Sheriff's Office, also testified that deputies do not keep call logs.[6] He explained that the cell phones could be used "if their radio fails at any given point."

Miller testified (1) that it "was his assumption" that Gregg County had call logs for Monsivais' phone and (2) that Woloszyn's testimony stating that Monsivais did not use a phone paid for in part by public funds on the dates referenced in Miller's written requests seemed "a little hinky." After the hearing, the trial court granted Gregg County's plea to the jurisdiction.

## B. Standard of Review

"Governmental immunity from suit deprives the trial court of subject[-]matter jurisdiction over claims against governmental entities unless the party suing the governmental entity establishes the State's consent to the suit." *Kaufman Cty. v. Combs*, 393 S.W.3d 336, 342 (Tex. App.—Dallas 2012, pet. denied) (citing *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011)). The TPIA "waives immunity for requestors seeking to compel a governmental body to make information available for public inspection under certain circumstances." *City of Galveston v. CDM Smith, Inc.*, 470 S.W.3d 558, 570 (Tex. App.—Houston [14th Dist.] 2015, pets. denied). By Section 552.321's "plain terms, the [TPIA's] waiver of immunity for mandamus relief requires the City to have 'refuse[d]' to supply public information." *Id.* at 572.

---

[6]Williford sent an email to Miller's attorney stating:

> I was unable to locate Tony Monsivais Cell Phone Allowance from 2013 when we began the program. I do know that it was the $30 a month allowance because he was in patrol at the time. Deputy Monsivais was not employed with us from June 20, 2014[,] thru March 27, 2015, when he was working somewhere else. If you have any further questions about this open records request please feel free to contact me. I believe I have sent everything you requested[,] plus I sent the patrol operations policy also that you did not request.

11

"A plea to the jurisdiction challenges a trial court's authority to decide the subject matter of a specific cause of action." *City of El Paso v. Abbott*, 444 S.W.3d 315, 320 (Tex. App.—Austin 2014, pet. denied) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)). "[W]e consider evidence that the parties have submitted when necessary to resolve the jurisdictional issues raised" "[w]here, as here, the plea to the jurisdiction challenges the existence of jurisdictional facts—i.e., whether the [governmental body] 'refuses to supply public information or information that the attorney general has determined is public information.'" *Id.* (quoting TEX. GOV'T CODE ANN. § 552.321; citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). "In fact, in a plea to the jurisdiction, a party may present evidence to negate the existence of a jurisdictional fact alleged in the pleadings, which we would otherwise presume to be true." *Id.* (citing *Miranda*, 133 S.W.3d at 227).

"If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence on that issue even where those facts may implicate the merits of the cause of action." *Fannin Cty. Cmty. Supervision & Corrs. Dep't v. Spoon*, No. 06-13-00103-CV, 2014 WL 3513388, at *5 (Tex. App.—Texarkana July 16, 2014, pet. denied) (mem. op.) (citing *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009)). "In this context, the trial court's review 'mirrors that of a traditional summary judgment motion.'" *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)). "Initially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction." *Id.* (quoting *Garcia*, 372 S.W.3d at 634). "If it does, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue." *Id.* (quoting *Garcia*, 372 S.W.3d

12

at 634). "If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the plea to the jurisdiction is determined as a matter of law." *Id.* (citing *Kirwan*, 298 S.W.3d at 622 ("A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted.")). "In considering this evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* (citing *Kirwan*, 298 S.W.3d at 622; *Tex. Dep't of Transp. v. Ingram*, 412 S.W.3d 129, 134 (Tex. App.—Texarkana 2013, no pet.)).

## C.    Analysis

Miller requested Monsivais' phone call logs for the dates of April 17, 2013, September 8, 2013, and May 3–5, 2014. The evidence introduced by Gregg County established (1) that there were no cell phone records for Monsivais on the dates included in Miller's written request, (2) that Monsivais had always paid for his personal cell phone, and (3) that Monsivais did not make, and was not required to keep, any call logs. By introducing this evidence, Gregg County met its burden on its plea to the jurisdiction by establishing that it had not refused to provide any information responsive to Miller's written request.

Thus, Miller was required to show the existence of a disputed material fact on the jurisdictional issue in order to demonstrate a waiver of governmental immunity from suit. Yet, Miller's testimony that he assumed Gregg County would have the requested information failed to create a disputed fact issue. Therefore, we conclude that the trial court properly granted the plea

to the jurisdiction and dismissed, with prejudice, Miller's TPIA mandamus action based on his written request.[7]

### III.   We Modify the Trial Court's Judgment

In his last point of error, Miller argues that the trial court erred in including the following sentences in its judgment:  "The Plaintiff's claims for injunctive and declaratory relief are denied with prejudice to refiling.  The Plaintiff's claims for damages are denied with prejudice to refiling." Miller's argument is based on his contention that his petition raised only a cause of action for TPIA mandamus relief.

Miller's petition stated that the suit was for mandamus relief provided for by Section 552.321.  Yet, the petition referenced many facts beyond the scope of a TPIA mandamus case.  It referenced Section 552.3215, addressing the availability of a declaratory judgment or injunctive relief pursuant to the TPIA, but Miller's prayer contained no request for such relief.  Miller also sought "monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees and non-monetary relief (in the form of a writ of mandamus compelling Defendant to release public information)."  Yet, the prayer contained no specific request for monetary relief.  Given the somewhat confusing language of the petition, the State filed a plea to the jurisdiction on what it believed constituted claims for "declaratory relief, injunctive relief, and money damages."  However, Miller clarified at the hearing that the only claim raised in his petition and the only relief requested in his prayer was mandamus relief under

---

[7]Where a plaintiff cannot demonstrate waiver of governmental immunity from suit, "then the trial court should dismiss the plaintiff's action . . . with prejudice because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined."  *Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004); *see Tex. A&M Univ. Sys. V. Koseoglu*, 223 S.W.3d 835, 846 (Tex. 2007).

Section 552.321. Given Miller's prayer for relief and the fact that under a section of the petition titled "Short Statement of the Cause of Action," Miller wrote, "[T]his is a mandamus action," we agree.

Consequently, we modify the trial court's judgment to delete the language that "the Plaintiff's claims for injunctive and declaratory relief are denied with prejudice to refiling. The Plaintiff's claims for damages are denied with prejudice to refiling."

## IV.    Conclusion

We affirm the trial court's judgment, as modified.

Bailey C. Moseley
Justice

Date Submitted:    March 1, 2018
Date Decided:     March 20, 2018

15