**Opinion issued June 10, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NOS. 01-20-00673-CV**
**01-20-00689-CV**
**01-20-00690-CV**
**01-20-00691-CV**
**01-20-00692-CV**
**01-20-00693-CV**
**01-20-00694-CV**
**01-20-00695-CV**

———————————

**HOUSTON COMMUNITY COLLEGE, Appellant**

**V.**

**THE HALL LAW GROUP, PLLC, DOLCEFINO CONSULTING,**
**AND SCOTT LAHA, Appellees**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 2020-31380, 2020-31380A, 2020-31380B, 2020-31380C,**
**2020-31380D, 2020-31380E, 2020-31380F, 2020-31380G**

---

**MEMORANDUM OPINION**

Appellees, The Hall Law Group, PLLC ("Hall"), Dolcefino Consulting ("Dolcefino"), and Scott Laha submitted various requests to appellant, Houston Community College ("HCC"), for public information, pursuant to the Texas Public Information Act ("TPIA").[1] Asserting that HCC refused to release the requested information, appellees sought writs of mandamus to compel HCC to comply with their requests.[2] HCC filed a plea to the jurisdiction, arguing that the trial court lacked subject matter jurisdiction over appellees' claims because HCC is a governmental body and that appellees failed to establish a waiver of governmental immunity under the TPIA, i.e., that HCC had "refused" to act. The trial court found that HCC had failed to comply with the TPIA, including provisions governing the suspension of deadlines during an epidemic,[3] and that such failure constituted a refusal to release public information under the TPIA. The trial court denied HCC's plea to the jurisdiction and granted mandamus relief, ordering that HCC provide all public

---

[1] *See* TEX. GOV'T CODE § 552.001–.376.

[2] *See id.* § 552.321(a) (authorizing requestor to file suit for mandamus against governmental body that refuses to release public information).

[3] *See* Act of May 17, 2019, 86th Leg., R.S., ch. 462, § 4, 2019 Tex. Gen. Laws 865, 866, *amended by* Act of May 11, 2021, 87th Leg., R.S., ch. 164, § 1 (S.B. 1225) (current version at TEX. GOV'T CODE § 552.233, "Temporary Suspension of Requirements for Governmental Body Impacted by Catastrophe"). Because the requests at issue were received, and this action was filed, prior to September 1, 2021, the effective date of the amendments, we apply the current version of the statute.

information responsive to appellees' TPIA requests. The trial court granted appellees' motions to sever their requests into separate writs.[4]

In its sole issue in this interlocutory appeal,[5] HCC contends that the trial court erred in denying its plea to the jurisdiction.

We affirm.

## Background

In its plea to the jurisdiction, HCC stated that, on December 11, 2019, Hall served it with a request for public information under the TPIA, seeking seven categories of documents pertaining to HCC's Chief Human Resources Officer, Janet May ("May").[6] On December 18, 2019, HCC acknowledged receipt of the request and sought clarification. On January 2, 2020, Hall responded with another TPIA

---

[4]  Trial court case no. 2020-31380 is appellate cause no. 01-20-00673-CV.
Trial court case no. 2020-31380A is appellate cause no. 01-20-00689-CV.
Trial court case no. 2020-31380B is appellate cause no. 01-20-00690-CV.
Trial court case no. 2020-31380C is appellate cause no. 01-20-00691-CV.
Trial court case no. 2020-31380D is appellate cause no. 01-20-00692-CV.
Trial court case no. 2020-31380E is appellate cause no. 01-20-00693-CV.
Trial court case no. 2020-31380F is appellate cause no. 01-20-00694-CV.
Trial court case no. 2020-31380G is appellate cause no. 01-20-00695-CV.

[5]  *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

[6]  The precise nature of the requests is not pertinent to this appeal. Generally, the requests sought documents regarding May's job duties and work schedule; complaints filed against her or relating to her; documents authorizing her to perform services on behalf of The Harris Center for Mental Health and IDD ("The Harris Center"); and documents regarding the number of African Americans she had recommended or approved for termination.

3

request, seeking seven new categories of documents.[7]  HCC requested clarification as to whether Hall's response constituted a new or modified request.  On January 7, 2020, Hall responded to both requests by consolidating them into one request containing eleven items ("Request No. 1").  On January 17, 2020, HCC responded to Hall, stating that, after a diligent search, it did not have records responsive to six of the requested items and seeking clarification regarding the remaining five items. On February 4, 2020, HCC sent a request to the Office of the Attorney General ("OAG"), asking whether it was required to release information related to one of the five remaining items.  On February 10, 2020, HCC released records to Hall related to two of the remaining items, and HCC notified Hall that it "did not have records responsive to the last two of its requested items" and considered the request closed.

On March 4, 2020, Dolcefino submitted a TPIA request to HCC ("Request No. 2"), seeking information concerning certain land sale contracts.  Seven business days later, however, HCC closed its offices for its scheduled Spring Break—March 16, 2020 through March 20, 2020.  Thereafter, beginning on March 20, 2020 and continuing thereafter, HCC "closed its offices indefinitely due to the COVID-19 pandemic."

---

[7]     Generally, the requests involved documents relating to May's work at The Harris Center and records showing any payments she had made or received for her work.

HCC asserted that, beginning in late March, "much of the country (indeed the world) largely stopped functioning due to COVID-19." And, "[a]mong the hundreds of state and local pronouncements issued throughout Texas in response to the pandemic, the [OAG] informed all governmental entities" that the computation of "business days" under the TPIA was affected as follows:

> If a governmental body has closed its physical offices for purposes of a public health or epidemic response or if a governmental body is unable to access its records on a calendar day, then such day is not a business day, even if staff continues to work remotely or staff is present but involved directly in the public health or epidemic response.

Accordingly, on April 3, 2020, HCC notified Dolcefino of HCC's closure due to the COVID-19 pandemic, stating that it would "process open records requests . . . upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines," as follows:

> To protect the health and safety of our students, faculty, and staff with regard to COVID-19 (Coronavirus), [HCC] facilities are closed beginning March 20, 2020 until further notice. Due to the COVID-19 pandemic and the Texas Governor's recent disaster declaration, HCC is following the Texas Attorney General's guidelines regarding the [TPIA]. The Attorney General has clarified that if a governmental body has closed its physical offices for purposes of a public health or epidemic response or if a governmental body is unable to access its records on a calendar day, then such day is not a business day for purposes of the [TPIA], even if staff continues to work remotely or staff is present but involved directly in the public health or epidemic response. As such, HCC will process open records requests submitted during HCC's closure/period of altered operations and will continue to process pending requests such as yours upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the Attorney General's guidelines.

5

On April 13, 2020, Hall submitted a TPIA request to HCC ("Request No. 3"), seeking seven categories of information, including emails and text messages involving May, documents authorizing her work on personnel matters at The Harris Center, and May's applications and resumes. On April 22, 2020, HCC again notified Hall of its closure due to the COVID-19 pandemic and stated that the request would be processed "upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines."

On May 18, 2020, Hall submitted a TPIA request to HCC ("Request No. 4"), seeking two categories of information. On May 19, 2020, HCC again notified Hall of its closure due to the COVID-19 pandemic and stated that the request would be processed "upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines."

On May 25, 2020, Hall filed a Petition for Writ of Mandamus, asking the trial court to compel HCC to comply with the TPIA by producing all public information requested in each of Hall's requests, i.e., Request Nos. 1, 3, and 4.

On June 23, 2020, Laha submitted a TPIA request to HCC ("Request No. 5"), seeking information about certain contracts and settlements. Later that day, HCC notified Laha of its closure due to the COVID-19 pandemic and stated that his request would be processed "upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines."

6

On June 25, 2020, Dolcefino submitted a TPIA request to HCC ("Request No. 6"), seeking copies of certain settlement agreements and documents detailing certain expenditures. HCC asserts that, later the same day, it again notified Dolcefino of its closure due to the COVID-19 pandemic and stated that it would process the request "upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines."

On June 29, 2020, Dolcefino submitted a TPIA request to HCC ("Request No. 7"), seeking certain documents detailing the race and nationality of employees terminated from HCC since 2014. HCC again notified Dolcefino that it would process the request "upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines."

On July 27, 2020, Dolcefino and Laha, alleging that HCC had refused to respond to their TPIA requests, intervened in Hall's suit for mandamus relief. They asked the trial court to compel HCC to provide the public information requested in Request Nos. 2, 5, 6, and 7. They also asked the trial court to sever their requests and enter separate writs.

On August 14, 2020, HCC filed its First Amended Plea to the Jurisdiction, seeking the dismissal of appellees' claims. HCC asserted that the trial court lacked subject matter jurisdiction over appellees' claims because HCC, as a governmental body, was immune from suit, and the TPIA provides only a limited waiver of

7

immunity in cases in which a governmental body has "refused" to supply public information. HCC asserted that there was no evidence that it had "refused" to give appellees access to the requested public information.

HCC asserted that, with respect to Request No. 1, it had (1) conducted a good-faith search and notified Hall that it did not have any responsive information to several of its requests; (2) produced some responsive information; and (3) sought an OAG decision as to whether it was required to disclose certain information that it believed was protected by attorney-client privilege. HCC asserted that it received Request No. 2 on March 4, 2020 and began processing it. However, before it was complete, and before its deadline under the TPIA had expired, HCC closed its offices for Spring Break, which continued until March 20, 2020. On March 20, 2020, HCC closed its offices due to the COVID-19 pandemic. And, as of the date of its amended plea on August 14, 2020, HCC had remained closed. HCC asserted that appellees sent Request Nos. 3 through 8 while HCC's offices were closed. Thus, pursuant to the OAG's guidelines, HCC was not incurring "business days" under the TPIA and "had no obligation under the law to respond." Rather, all statutory deadlines had indefinitely ceased.

Subsequently, on August 19, 2020, Hall submitted another TPIA request to HCC ("Request No. 8"), seeking copies of certain purchase orders and related materials. On August 21, 2020, Hall filed a second amended petition for writs of

8

mandamus, asking the trial court to compel HCC to produce all public information requested in each of Hall's TPIA requests, i.e., Request Nos. 1, 3, 4, and 8. Hall also asked the trial court to sever each request and issue a separate writ.

In addition, Hall filed a response, which Dolcefino and Laha joined, to HCC's First Amended Plea to the Jurisdiction. Appellees argued that the trial court had jurisdiction over their claims because they, as requestors, were statutorily authorized under the TPIA to seek mandamus relief when, as here, a public entity had refused either to release requested public information or to timely seek an OAG decision about the request. Appellees asserted that, with respect to Request No. 1, HCC's mere request of an OAG opinion did not indefinitely excuse HCC from complying with their requests. And, no OAG opinion had been forthcoming. With respect to Request Nos. 2 through 8, HCC was required to take certain statutorily-mandated actions if it wished to delay the production of public information during the COVID-19 epidemic and that HCC had failed to comply. Appellees further asserted that the OAG's guidelines were advisory and that the OAG had no authority to invalidate statutory law or to excuse HCC's failure to comply with the TPIA.

On September 24, 2020, the trial court denied HCC's plea to the jurisdiction. In its order, the trial court expressly declined to rule on Request No. 1 (the combined request from December 2019 and January 2020), as follows:

9

The Court finds that HCC has partially responded to [Hall's] December and January TPIA requests and withheld some information while seeking an opinion from the Attorney General.

[Hall] asks the Court to find that HCC's requests for clarification of its December and January TPIA requests were unreasonable stall tactics and that HCC was untimely in seeking an AG opinion. While the Court finds that some of HCC's requests for clarification were reasonable, most were not. HCC advises that an opinion from the Attorney General has been received, but has not offered the opinion to the Court. [Hall] also has not provided any evidence that HCC has failed to follow the AG's opinion. For this reason, the record is insufficient for the court to rule on the December and January TPIA requests and reserves Judgment on these requests until further proceedings.

With respect to Request Nos. 2 through 8, the trial court found that "HCC's purported justifications for not responding in any manner to these requests are not tenable and that the failure to respond is effectively a refusal to respond."

The trial court also granted appellees' requested mandamus relief and severed each of the requests into a separate writ, as follows:

With respect to Request No. 2,[8] the trial court found:

The record in this case shows that on March 4, 2020 Dolcefino served a written TPIA request on HCC. The request asked for four (4) categories of public information. The Court finds that the requests were reasonably clear as to the public information being sought and HCC never sought clarification of the requests.

More than six (6) months have passed since Dolcefino served its March 4, 2020 TPIA requests on HCC. The record shows that HCC has not fully supplied all public information requested . . . and has not supplied the Court with a statutorily authorized excuse for failing to comply with the TPIA in responding to the . . . request. . . .

---

[8] Trial court case number 2020-31380A.

10

With respect to Request No. 3,[9] the trial court found:

> The record in this case shows that on April 13, 2020 Hall served a written TPIA request on HCC. The request asked for seven (7) categories of public information. The court finds that the requests were reasonably clear as to the public information being sought.
>
> More than five months have passed since Hall served its April 13, 2020 TPIA requests on HCC. The record shows that HCC has not fully supplied all public information requested by [Hall] and has not supplied the Court with a statutorily authorized excuse for failing to comply with the TPIA in responding to the . . . request. . . .

With respect to Request No. 4,[10] the trial court found:

> The record in this case shows that on May 18, 2020 Hall served a written TPIA request on HCC. The request asked for two (2) categories of public information. The court finds that the requests were reasonably clear as to the public information being sought.
>
> More than four months have passed since Hall served its May 18, 2020 TPIA requests on HCC. The record shows that HCC has not fully supplied all public information requested by [Hall] and has not supplied the Court with a statutorily authorized excuse for failing to comply with the TPIA in responding to the May 18, 2020 TPIA request. . . .

With respect to Request No. 5,[11] the trial court found:

> The record in this case shows that on June 23, 2020 Laha served a written TPIA request on HCC. The request asked for six (6) categories of public information. The Court finds that the requests were reasonably clear as to the public information being sought and HCC never sought clarification of the requests.
>
> More than forty-five (45) days have passed since Laha served his June 23, 2020 TPIA requests on HCC. The record shows that HCC has not fully supplied all public information requested . . . and has not

---

[9] Trial court case number 2020-31380E.

[10] Trial court case number 2020-31380F.

[11] Trial court case number 2020-31380B.

11

supplied the Court with a statutorily authorized excuse for failing to comply with the TPIA in responding to the June 23, 2020 TPIA request. . . .

With respect to Request No. 6,[12] the trial court found:

The record in this case shows that on June 25, 2020 Dolcefino served a written TPIA request on HCC. The request asked for two (2) categories of public information. The Court finds that the requests were reasonably clear as to the public information being sought and HCC never sought clarification of the requests.

More than forty-five (45) days have passed since Dolcefino served its June 25, 2020 TPIA requests on HCC. The record shows that HCC has not fully supplied all public information requested . . . and has not supplied the Court with a statutorily authorized excuse for failing to comply with the TPIA in responding to the . . . request. . . .

With respect to Request No. 7,[13] the trial court found:

The record in this case shows that on June 29, 2020 Dolcefino served a written TPIA request on HCC. The request asked for four (4) categories of public information. The Court finds that the requests were reasonably clear as to the public information being sought and HCC never sought clarification of the requests.

More than forty-five (45) days have passed since Dolcefino served its June 29, 2020 TPIA requests on HCC. The record shows that HCC has not fully supplied all public information requested . . . and has not supplied the Court with a statutorily authorized excuse for failing to comply with the TPIA in responding to the . . . request. . . .

With respect to Request No. 8,[14] the trial court found:

The record in this case shows that on August 19, 2020 Hall served [a] written TPIA request on HCC. The request asked for four (4)

---

[12]     Trial court case number 2020-31380C.

[13]     Trial court case number 2020-31380D.

[14]     Trial court case number 2020-31380G.

12

categories of public information. The court finds that the requests were reasonably clear as to the public information being sought.

More than one month has passed since Hall served its August 19, 2020 TPIA requests on HCC. The record shows that HCC has not fully supplied all public information requested by [Hall] and has not supplied the Court with a statutorily authorized excuse for failing to comply with the TPIA in responding to the August 19, 2020 TPIA request. . . .

In addition, in each writ, the trial court found that:

HCC's failure to comply with the unambiguous requirements of Tex. Gov't Code 552.233 governing a public entity's suspension of the TPIA during an epidemic was not excused. Further, the record shows that HCC did not comply with the legal notice and requirements specified in the [TPIA] to suspend its compliance with the TPIA during an epidemic like COVID-19.

The trial court ordered that HCC provide all public information responsive to each request. And, if HCC did not comply, appellees could have "any law enforcement officer compel compliance . . . by use of any and all lawfully permitted and available means."

**Plea to the Jurisdiction**

In its sole issue, HCC argues that the trial court erred in denying its plea to the jurisdiction because HCC is a governmental body and appellees did not establish a waiver of governmental immunity under the TPIA, i.e., that HCC refused to seek an OAG decision as to whether appellees' requested information constituted public information or refused to supply public information. *See* TEX. GOV'T CODE § 552.321(a).

13

***Standard of Review and Governing Legal Principles***

A trial court's ruling on a jurisdictional plea is subject to de novo review. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Although the plaintiffs' claims may form the context against which the jurisdictional plea is determined, the purpose of the plea is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

Review of a plea challenging the existence of jurisdictional facts, as here, mirrors that of a traditional summary-judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *City of Hous. v. Guthrie*, 332 S.W.3d 578, 587 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c) . . . . By requiring the [governmental body] to meet the summary judgment standard of proof . . . , we protect the plaintiffs from having to put on their case simply to establish jurisdiction."); *see also* TEX. R. CIV. P. 166a(c). A court may consider evidence as necessary to resolve a dispute over the jurisdictional facts, even if the evidence "implicates both the subject matter jurisdiction of the court and the merits of the case." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217,

226 (Tex. 2004).  We take as true all evidence favorable to the plaintiffs and indulge every reasonable inference and resolve any doubts in their favor.  *Id*. at 228.

If the governmental body meets its burden to establish that the trial court lacks jurisdiction, then the plaintiffs must show that there is a disputed material fact regarding the jurisdictional issue.  *Id*. at 227–28.  If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted and a factfinder must resolve the issue.  *Id*.  If the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law.  *Id*. at 228.

Here, it is undisputed that HCC is a "governmental body" generally immune from suit, except where that immunity has been specifically waived by the legislature.  *See* TEX. GOV'T CODE § 552.003(1)(A); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *see also Mosley v. Houston Cmty. Coll. Sys*., 951 F. Supp. 1279, 1290 (S.D. Tex. 1996).

The TPIA provides a limited waiver of governmental immunity by allowing a requestor of public information to bring a suit for a writ of mandamus to compel a governmental body to release the information.  *See* TEX. GOV'T CODE § 552.321(a).  A requestor may seek mandamus relief under the TPIA if the governmental body "refuses" (1) to seek an OAG decision as to whether requested information is public or (2) to supply public information.  *See id.*  It is the refusal to supply public information that is the standard by which to determine whether governmental

15

immunity has been waived and whether a court has subject matter jurisdiction over the claim. *City of Galveston v. CDM Smith, Inc.*, 470 S.W.3d 558, 572 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("By its plain terms, the [TPIA's] waiver of immunity for mandamus relief requires the [governmental body] to have 'refuse[d]' to supply public information."). In the context of the TPIA, to "refuse" means to "show or express a positive unwillingness to do or comply." *City of El Paso v. Abbott*, 444 S.W.3d 315, 324 (Tex. App.—Austin 2014, pet. denied).

The purpose of the TPIA is to provide accountability and transparency in government by establishing mechanisms to foster public access to government records. *See* TEX. GOV'T CODE § 552.001(a); *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 57 (Tex. 2015); *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011) (noting purpose of TPIA to provide public with "complete information about the affairs of government and the official acts of public officials and employees"). The TPIA "shall be liberally construed in favor of granting a request for information." TEX. GOV'T CODE § 552.001(b).

Pursuant to the TPIA, "[a]n officer for public information of a governmental body shall promptly produce public information for inspection, duplication, or both on application by any person to the officer." *Id.* § 552.221(a). "Promptly" means "as soon as possible under the circumstances, that is, within a reasonable time, without delay." *Id.* If the governmental body cannot produce the public information

16

"within 10 business days" after the date the information is requested, it "shall certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available." *Id.* § 552.221(d). If the request is "unclear to the governmental body, it may ask the requestor to clarify the request." *Id.* § 552.222(b). For high volume requests, the governmental body may discuss with the requestor how the scope of the request might be narrowed. *Id.*

If a governmental body wishes to withhold requested information from public disclosure that it considers to be within one of the exceptions under the TPIA, it must, "not later than the 10th business day" after receiving the request, ask the OAG for a decision on the matter, unless there has been a previous decision, and notify the requestor. *Id.* § 552.301. If the governmental body does not timely comply, the information at issue is presumed public and must be released, unless there is a compelling reason to withhold the information. *Id.* § 552.302.

The deadlines under the TPIA may be extended during a catastrophic event. Government Code section 552.233, titled "Temporary Suspension of Requirements for Governmental Body Impacted by Catastrophe," allows a governmental body impacted by a catastrophic event, including an epidemic (or pandemic) like COVID-19, to elect to "suspend" the requirements of the TPIA for a period of up to

17

14 consecutive days. *See id.* § 552.233 (defining "catastrophe" and providing procedure for electing "suspension period").[15]

Section 552.233 provides that:

> The requirements of [the TPIA] do not apply to a governmental body during the suspension period determined by the governmental body under Subsections (d) and (e) if the governmental body:
>> (1) is currently impacted by a catastrophe; and
>> (2) complies with the requirements of this section.

*Id.* § 552.233(b). A governmental body that elects to temporarily suspend the TPIA's requirements "must submit notice to the [OAG] that the governmental body is currently impacted by a catastrophe and has elected to suspend the applicability of those requirements during the initial suspension period," which may not exceed "seven consecutive days." *See id.* § 552.233(c)–(d). The governmental body may

---

[15] In 2021, the Texas Legislature amended section 552.233 to provide that a "'catastrophe' does not mean a period when staff is required to work remotely and can access information responsive to an application for information electronically, but the physical office of the governmental body is closed." *See* Act of May 17, 2019, 86th Leg., R.S., ch. 462, § 4, 2019 Tex. Gen. Laws 865, 866, *amended by* Act of May 11, 2021, 87th Leg., R.S., ch. 164, § 1 (S.B. 1225) (current version at TEX. GOV'T CODE § 552.233). In addition, the Legislature added section 552.2211, providing that: "Except as provided by Section 552.233, if a governmental body closes its physical offices, but requires staff to work, including remotely, then the governmental body shall make a good faith effort to continue responding to applications for public information, to the extent staff have access to public information responsive to an application, pursuant to this chapter while its administrative offices are closed." *See* Act of May 17, 2019, 86th Leg., R.S., ch. 462, § 4, 2019 Tex. Gen. Laws 865, 866, *amended by* Act of May 11, 2021, 87th Leg., R.S., ch. 164, § 2 (S.B. 1225) (to be codified at TEX. GOV'T CODE § 552.2211). As noted above, we apply the current version of the TPIA.

18

extend the initial suspension period "one time" for "not more than seven consecutive days." *Id.* § 552.233(e). A governmental body that suspends the applicability of the TPIA must provide certain notices to the public. *Id.* § 552.233(f). The OAG "shall prescribe the form of the notice that a governmental body must submit to the office" and "shall continuously post" on its website each notice submitted to the office under this section. *Id.* § 552.233(i), (j).

*Analysis*

In its live plea to the jurisdiction, HCC argued that the trial court lacked subject matter jurisdiction over appellees' TPIA claims because the jurisdictional evidence establishes that HCC did not "refuse" (1) to seek an OAG decision as to whether the requested information was public or (2) to supply public information. *See id.* § 552.321; *CDM Smith*, 470 S.W.3d at 572.

With respect to Request No. 1, under which Hall consolidated its December 11, 2019 and January 2, 2020 requests, the trial court found that HCC had "partially responded" and had "withheld some information while seeking an opinion from the [OAG]." In addition, it found that, although HCC had advised that an OAG opinion had been received, HCC had not offered the opinion to the trial court. Conversely, Hall had "not provided any evidence that HCC ha[d] failed to follow the [OAG's] opinion." The trial court concluded that, "[f]or this reason, the record [was] insufficient for the court to rule." And, it "reserve[d] judgment on these requests

19

until further proceedings." We conclude that, there being fact issues regarding the trial court's jurisdiction over Request No. 1 and no ruling, nothing is presented for our review. *See Miranda*, 133 S.W.3d at 227–28 (stating that if evidence raises fact issue regarding jurisdiction, plea cannot be granted and factfinder must resolve).

With respect to Request Nos. 2 through 8, it is undisputed that HCC did not seek an OAG decision as to whether the requested information was public. *See* TEX. GOV'T CODE § 552.321. The parties do not dispute that the information appellees sought in Request Nos. 2 through 8 constituted "public information." *See id.* § 552.002. The question presented is whether the jurisdictional evidence establishes that HCC refused to supply the requested public information. *See id.* § 552.321.

Resolution of jurisdictional questions frequently entails, as here, issues of statutory construction, which itself presents a question of law. *Abbott*, 444 S.W.3d at 320. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. TEX. GOV'T CODE § 312.005; *see TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). To discern that intent, we begin with the words of the statute. TEX. GOV'T CODE § 312.002. If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage. *Combs*, 340 S.W.3d at 439. Undefined terms are typically given their ordinary meaning, unless a different or more precise definition is apparent from their use in the context of the statute. *Id.* If a statute is

20

unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results. *Id.* We consider statutes as a whole. *Id.* We presume that the legislature chooses a statute's language with care, including each word for a purpose, while purposefully omitting words not chosen. *Id.* If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, we may defer to agency interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule. *Id.* at 438.

Here, the TPIA required that HCC, on the application of any person, "promptly produce" public information. *See* TEX. GOV'T CODE § 552.221(a). Again, "promptly" means "as soon as possible under the circumstances, that is, within a reasonable time, without delay." *Id.* If HCC could not produce the requested public information "within 10 business days" after the date of the request, HCC was required to "certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information [would] be available." *Id.* § 552.221(d).

HCC does not dispute that it did not produce the public information responsive to Request Nos. 2 through 8 within 10 business days after the information was requested and did not "set a date and hour within a reasonable time when the information would be available," as statutorily required *See id.* Nor does HCC dispute that it did not produce the requested public information by the time of the

21

trial court's ruling, on September 24, 2020, which was up to six months after HCC received appellees' requests. HCC admits that it did not process the requests, as required under the TPIA, and that it notified appellees that processing their requests was indefinitely postponed. Thus, the record supports the trial court's finding that HCC's "failure to respond [was] effectively a refusal to respond" under the TPIA. *See id.* § 552.321; *Abbott*, 444 S.W.3d at 324 (noting that, in context of TPIA, to "refuse" means to "show or express a positive unwillingness to do or comply").

Again, the TPIA provides that, during a catastrophic event, including a pandemic such as COVID-19, a governmental body may elect to temporarily suspend the ten-business-day deadline up to a total of 14 consecutive, or calendar, days. *See* TEX. GOV'T CODE § 552.233. It is undisputed that HCC did not make an election to temporarily suspend the applicability of the TPIA, although we note that HCC's delays in releasing the requested public information exceeded the maximum suspension period under the statute regardless. *See id.*

HCC argued in its plea to the jurisdiction that its failure to supply the public information at issue did not constitute a "refusal" under the TPIA because, in light of the COVID-19 pandemic, the OAG issued guidelines defining the term "business day" in the TPIA in a manner that suspended the TPIA indefinitely and rendered a temporary suspension unnecessary. *See id.* §§ 552.221(d), .233, .321. In support of

22

its argument, HCC attached to its plea a copy of the OAG's guidelines, which the

OAG posted on its website. The guidelines state:

**Update: Calculation of Business Days and COVID-19**

As part of the unprecedented response to coronavirus in Texas, and in light of the Governor's recent disaster declaration, our office has received inquiries regarding the calculation of business days under the Public Information Act (the "Act") and related use of the new temporary suspension process under section 552.233 of the Government Code.

Section 552.233 of the Government Code permits a governmental body impacted by a catastrophe or disaster to suspend the applicability of the Act for up to 14 calendar days. Use of the section 552.233 suspension process is appropriate where a governmental [body] is open for business but determines that a catastrophe has interfered with its ability to comply with the Act. A section 552.233 suspension is not necessary if the governmental body is not open for business or if the applicable suspension period does not otherwise encompass a business day, as described below:

- Holidays observed by governmental bodies are not business days.
- Weekends are not business days.
- Skeleton crew days are not business days.
- A day on which a governmental body's administrative offices are closed is not a business day.
- *If a governmental body has closed its physical offices for purposes of a public health or epidemic response or if a governmental body is unable to access its records on a calendar day, then such day is not a business day, even if staff continues to work remotely or staff is present but involved directly in the public health or epidemic response.*

(Emphasis added.)

HCC asserted that it "closed its offices from Monday, March 16 to Friday,

March 20, 2020, for spring break, and thereafter closed its offices beginning March

23

20, 2020 due to COVID-19." And, "HCC's offices remain closed to this day." Relying on the emphasized language, it asserted, "HCC has not incurred any 'business days' under the TPIA since March 16, [2020] and all of its deadlines under the TPIA have ceased." And, thus, "it was not refusing to comply" with the TPIA. HCC essentially asserted that this language authorized it to indefinitely postpone producing public information responsive to appellees' requests and that it notified each requestor accordingly.

HCC asserted that it was "processing" Request No. 2 when it closed for Spring Break on March 16, 2020. At that point, HCC had incurred only 7 business days since its receipt of the request. And, HCC remained closed for Spring Break through March 20, 2020. Thereafter, beginning on March 20, 2020, HCC "closed its offices indefinitely due to the COVID-19 pandemic." HCC notified Dolcefino on April 3, 2020 of HCC's closure due to the COVID-19 pandemic and stated that it would process Request No. 2 "upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines."

With respect to Request Nos. 3 through 8, HCC asserted that it notified each requestor immediately after receipt of their request that HCC was closed. Hall submitted Request Nos. 3 and 4 on April 13, 2020 and May 19, 2020, respectively. On April 22, 2020 and May 19, 2020, HCC again notified Hall of its closure due to the COVID-19 pandemic and stated that its requests would be processed "upon

24

HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines." Laha submitted Request No. 5 on June 23, 2020. HCC notified Laha that same day of its closure due to COVID-19 and that his request would be processed "upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines." Dolcefino submitted Request Nos. 6 and 7 on June 25 and 29, 2020, respectively. HCC again notified Dolcefino of its closure and stated that it would process the requests "upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines." Hall submitted Request No. 8 on August 19, 2020. On August 20, 2020, HCC again notified Hall of its closure due to COVID-19 and that it would process the request "upon HCC's return to normal operations/business days, in accordance with the [TPIA] and the [OAG's] guidelines."

HCC notes that, "[t]hroughout the TPIA, the statute mandates that virtually all deadlines are calculated using the responding governmental entity's 'business days.'" *See, e.g.*, TEX. GOV'T CODE §§ 552.221(d), .225(a), .233(g), .2615, .301(b). We note that the term "business day" is not defined in the TPIA. "When a statute uses a word that it does not define, our task is to determine and apply the word's common, ordinary meaning." *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014). In determining the common, ordinary meaning of a term, we may look to a "wide variety of sources, including dictionary definitions, treatises and

25

commentaries, our own prior constructions of the word in other contexts, the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure." *Id.*

The common meaning of the term "business day" is "[a] day that most institutions are open for business." BLACK'S LAW DICTIONARY 402 (7th ed. 1999). The term "business day" is defined elsewhere in the Government Code, and in other statutes, as a day other than a Saturday, Sunday, or holiday. *See* TEX. GOV'T CODE § 2116.001 ("Business day" means a day other than a Saturday, Sunday, or banking holiday for a bank chartered under the laws of this state."); *see also* TEX. EST. CODE § 452.004 (defining "business day" as "a day other than a Saturday, Sunday, or holiday recognized by this state"); TEX. FAM. CODE § 86.0011 (defining "business day" as "a day other than a Saturday, Sunday, or state or national holiday"); TEX. HEALTH & SAFETY CODE § 775.0221 (defining "business day" as "a day other than a Saturday, Sunday, or state or national holiday"); TEX. INS. CODE § 542.051 (defining "business day" as "a day other than Saturday, Sunday, or holiday recognized by this state"); TEX. LOC. GOV'T CODE § 143.034 ("In computing this period, a Saturday, Sunday, or legal holiday is not considered a business day."); TEX. PROP. CODE § 62.026 (providing that "business day" means "a day other than a Saturday, Sunday, or holiday recognized by this state").

The OAG guidelines, in pertinent part, state that, "[a]s part of the unprecedented response to coronavirus in Texas, and in light of the Governor's recent disaster declaration," it has received inquiries regarding the "calculation of business days" under the TPIA. And, it concludes that a section 552.233 suspension is "not necessary" if the governmental body is "not open for business or if the applicable suspension period does not otherwise encompass a business day," which it describes as follows:

> *If a governmental body has closed its physical offices for purposes of a public health or epidemic response* or if a governmental body is unable to access its records on a calendar day, *then such day is not a business day, even if staff continues to work remotely* or staff is present but involved directly in the public health or epidemic response.

(Emphasis added.)

Beginning with the context in which the OAG issued its guidelines, the Texas Disaster Act of 1975 ("Disaster Act"), codified at Government Code Chapter 418, is a "comprehensive, detailed continuity-of-government framework that carefully allocates powers, duties, and responsibilities across various levels of state government and multiple agencies." *State v. El Paso Cty.*, 618 S.W.3d 812, 831–32 (Tex. App.—El Paso 2020, mand. dism'd) (Rodriguez, J., dissenting); *see* TEX. GOV'T CODE ch. 418. One of its stated purposes is to "clarify and strengthen the roles of the governor, state agencies, the judicial branch of state government, and local government in prevention of, preparation for, response to, and recovery from

27

disasters." TEX. GOV'T CODE § 418.002(4). It authorizes the governor to waive or suspend certain statutory provisions, requirements, and deadlines if compliance would hinder or delay actions necessary to cope with a disaster. *See id.* § 418.016.

On March 13, 2020, Governor Greg Abbott issued a proclamation certifying that COVID-19 "poses an imminent threat of disaster for all counties in the State of Texas."[16] Each month thereafter, throughout the time pertinent to this appeal, the Governor renewed his state disaster declaration and issued numerous emergency orders pertaining to the coronavirus pandemic.[17] For instance, these orders included suspensions of portions of the Texas Open Meetings Act.[18] *See id.*; *see also* TEX. GOV'T CODE ch. 551. However, we are unaware of, and HCC has not directed us to, any such orders suspending the TPIA.

"The Attorney General is a member of the Executive Department whose primary duties are to render legal advice in opinions to various political agencies and to represent the State in civil litigation." *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001); *see* TEX. GOV'T CODE § 402.021. "While Attorney General opinions are

---

[16] The Governor of the State of Tex., Proclamation No. 41-3720 (issued Mar. 13, 2020), 45 Tex. Reg. 2094, 2094–95 (2020).

[17] *See* The Governor of the State of Tex., Exec. Orders GA-08–36, available at https://lrl.texas.gov/legeLeaders/governors/displayDocs.cfm?govdoctypeID=5&governorID=45 (last visited June 7, 2021).

[18] *See* Office of Governor Greg Abbott, COVID-19 OMA Suspension Letter, https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/open-government/COVID-19-OMA-Suspension-Letter.pdf (last visited June 7, 2021).

28

persuasive, they are not controlling on the courts." *Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996); *see In re Smith*, 333 S.W.3d 582, 588 (Tex. 2011) ("The opinion of the attorney general is not binding on this Court. . . .").

Here, HCC relies, not on a formal opinion by the OAG, but on guidelines posted on the OAG's website. The OAG is tasked with "maintain[ing] uniformity in the application, operation, and interpretation" of the TPIA. TEX. GOV'T CODE § 552.011; *Harris Cty. Appraisal Dist. v. Integrity Title Co., LLC*, 483 S.W.3d 62, 66 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). "While the Attorney General's interpretation of the [TPIA] may be persuasive, it is not controlling." *City of Dall. v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010); *Harris Cty. Appraisal Dist.*, 483 S.W.3d at 66.

Again, our task in construing a statute is to give effect to the legislature's intent in enacting it. *Abbott*, 304 S.W.3d at 384. We are ordinarily confined to the statute's plain language. *Id.* When a provision is silent, such as to the definition of "business day," as here, we look to the statute as a whole and strive to give it a meaning that is in harmony with its other provisions. *Id.*

The TPIA is to be "liberally construed in favor of granting a request for information." TEX. GOV'T CODE § 552.001(b). And, a governmental body is required to "promptly produce public information . . . on application by any person to the officer." *Id.* § 552.221(a). "Promptly" means "as soon as possible under the

29

circumstances, that is, within a reasonable time, without delay." *Id.* The TPIA requires that if a governmental body cannot produce requested public information "within 10 business days" after the date of the request, it "shall certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available." *See id.* § 552.221(d).

In the language upon which HCC relies in the OAG's guidelines, the OAG expanded the common definition of the term "business day," as discussed above, such that the term, under the TPIA, does not include days on which a governmental body has closed its physical offices in response to an epidemic, i.e., COVID-19, even if staff continues to work remotely, without regard to duration. Notably, HCC asserts that, as of the date of the trial court's ruling, HCC had thus been "closed" for over six months. It does not assert that, during that time, it was unable to access its records or that all of its staff was directly involved in the epidemic response. If, under such circumstances, "business days" do not accrue, then a governmental body's duty to comply with the TPIA is suspended indefinitely. *See id.* § 552.221(d) (requiring production of requested public information within 10 "business days"). Again, as HCC notes, "[t]hroughout the TPIA, the statute mandates that virtually all deadlines are calculated using the responding . . . entity's 'business days.'"

We conclude that the OAG's interpretation of the term "business day" under the TPIA, insofar as it excludes days that a "governmental body has closed its

30

physical offices for purposes of a public health or epidemic response . . . , even if staff continues to work remotely," without limit or regard to duration, is inconsistent with the TPIA as a whole, which is to be "liberally construed in favor of granting a request for information" and requires a governmental body to "promptly produce public information." *Id.* §§ 552.001(b), 552.221(a); *see Abbott*, 304 S.W.3d at 384 (noting that "[t]he Legislature has clearly expressed an intent that governmental entities respond promptly to requests for public information," declining to follow OAG's interpretation of TPIA provision involving silent matter and instead construing in light of "statute as a whole").

In addition, the OAG's interpretation is inconsistent with section 552.233, which expressly addresses the processing of TPIA requests during an epidemic and caps the suspension period at a maximum of 14 consecutive days. *See* TEX. GOV'T CODE § 552.233; *see Abbott*, 304 S.W.3d at 384 (concluding that OAG's interpretation of TPIA provision was "inconsistent with other provisions of the Act" and declining to follow).

Because we are not persuaded by the OAG's interpretation of the term "business day," insofar as discussed, we decline to follow it.[19] *See Abbott*, 304

---

[19] We note that the attorney general must be served with a copy of any proceeding challenging the constitutionality of a statute or ordinance and is entitled to be heard. *See* TEX. CONST. art. V, § 32, TEX. GOV'T CODE § 402.010 (requiring courts to notify OAG of state constitutional challenges); TEX. CIV. PRAC. & REM. CODE § 37.006(b). This is not, however, a proceeding challenging the constitutionality of

S.W.3d at 384; *see also Boeing Co. v. Paxton*, 466 S.W.3d 831, 838 (Tex. 2015) ("While the Attorney General's interpretation of the [TPIA] is entitled to due consideration, as with other administrative statutory constructions, such deference must yield to unambiguous statutory language."); *see, e.g.*, *Abbott v. Tex. State Bd. of Pharmacy*, 391 S.W.3d 253, 259 (Tex. App.—Austin 2012, no pet.); *Allegheny Cas. Co. v. State*, 52 S.W.3d 894, 900 (Tex. App.—El Paso 2001, no pet.); *City of Garland v. Dall. Morning News*, 969 S.W.2d 548, 554–55 (Tex. App.—Dallas 1998), *aff'd*, 22 S.W.3d 351 (Tex. 2000).

We conclude that HCC did not establish as a matter of law that its failure to supply public information responsive to appellees' requests did not constitute a "refusal" under the TPIA. *See* TEX. GOV'T CODE §§ 552.221(d), .321(a); *CDM Smith*, 470 S.W.3d at 572 ("By its plain terms, the [TPIA's] waiver of immunity for mandamus relief requires the [governmental body] to have 'refuse[d]' to supply public information."); *see also Miranda*, 133 S.W.3d at 227–28. Because we conclude that the trial court has jurisdiction over appellees' TPIA claims, we hold that the trial court did not err in denying HCC's plea to the jurisdiction.

We overrule HCC's sole issue.

---

a statute or ordinance. We do not determine whether the OAG's website guidelines vitiate Government Code section 552.233 because it is undisputed that HCC did not invoke section 552.233.

## Conclusion

We affirm the trial court's denial of HCC's plea to the jurisdiction.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.