**Affirmed and Opinion Filed July 15, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00546-CV

## EMPOWER TEXANS, INC., Appellant
## V.
## DALLAS COUNTY, TEXAS, Appellee

### On Appeal from the 298th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-19-10268

## OPINION

Before Chief Justice Burns, III, and Justices Schenck and Osborne
Opinion by Justice Osborne

Empower Texans, Inc. (Empower) appeals the trial court's order granting the

plea to the jurisdiction filed by Dallas County, Texas, and dismissing with prejudice

Empower's petition for a writ of mandamus relating to its Texas Public Information

Act (TPIA) request.[1]   Empower raises five issues arguing: (1)–(3) the trial court

erred when it granted the County's plea to the jurisdiction, concluding it lacked

subject-matter jurisdiction, because Empower brought a claim for which

---

[1] Empower also brought claims for declaratory relief under Chapter 37 of the Texas Civil Practice and Remedies Code.  The trial court granted the County's plea to the jurisdiction as to those claims, but Empower has not raised any issues relating to that decision.

governmental immunity was waived; and, in the alternative, (4)–(5) the trial court erred when it overruled by operation of law Empower's motion to modify the judgment because (a) Empower's claims were not rendered moot by the County's waiver of the disputed fees, so Empower has standing to assert its claims, and (b) even if the case is moot, the trial court should have dismissed the case without prejudice. In this case of first impression, we conclude the trial court did not err and affirm the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual background in this opinion is a recitation of the allegations contained in and the exhibits attached to the parties' pleadings and motions.[2]

Empower is a non-profit media organization that reports on matters regarding state and local government. On April 5, 2019, Empower sent an email to the County attaching its open records request seeking production of specified public information.[3] From April 5 to June 17, 2019, the County and Empower exchanged emails and letters in which: (1) Empower clarified its request and the County confirmed its understanding of the clarified request; (2) Empower corrected the time frame for the requested information and specified it wanted the information in digital format, i.e., email or thumb drive; (3) the County attached a written itemization of

---

[2] The record on appeal does not contain a reporter's record.

[3] The precise nature of the request is not pertinent to this appeal. Generally, the request sought, for a specified time period, correspondence between representatives of Alvarez & Marsal, a Dallas County Judge, the Dallas County Commissioners, the Dallas County Administrator, and any member of the Dallas County Technology Department that referenced "Tech Share."

the estimated charges in the total amount of $207 for copies of the information requested; (4) Empower accepted the estimated costs, requested instructions for payment by credit card, and indicated a preference to retrieve the CD in person; and (5) the County provided instructions on how to pay by credit card.

On July 10, 2019, Empower modified its request to seek inspection of the information and sought a formal estimate of costs for the preparation of redactions. The County responded that the request was for electronic information that required programming and manipulation and provided a revised cost estimate of $198. Empower replied that it believed the charges for inspection were illegal, it intended to file a complaint with the Office of the Texas Attorney General (OAG), and it was considering whether to file a petition for a writ of mandamus.

On July 19, 2019, Empower filed both a complaint with the OAG and its petition for writ of mandamus and declaratory-judgment action in the trial court. In its first amended petition, Empower sought: (1) a writ of mandamus compelling the County to make the requested information available for inspection at a cost no higher than that authorized by law because the County was demanding the payment of unlawful charges prior to inspection; and (2) a declaratory judgment that the County is not entitled to require Empower to pay for the costs related to searching for and assembling records responsive to Empower's request. Empower asserted the trial court had subject-matter jurisdiction over its mandamus proceeding under § 552.321(a) of the Texas Government Code because the County's actions amounted

–3–

to a refusal to make public information available for inspection, which satisfied the statutory prerequisite to the waiver of governmental immunity. *See* TEX. GOV'T CODE ANN. § 552.321(a).[4] The County responded by filing a plea to the jurisdiction, an alternative motion to dismiss pursuant to Texas Rule of Civil Procedure 91a, and its original answer generally denying the claims and asserting several affirmative defenses. Also, on the same day it filed its plea to the jurisdiction, the County sent another revised cost estimate reducing the estimated total to $90, consisting of $60 for the conversion of the electronic documents to a publicly accessible format and $30 for the redaction of confidential or protected information.

Meanwhile, on November 21, 2019, the OAG issued an opinion that concluded, among other things: (1) the task of redacting confidential information from information that exists in electronic form meets the definition of "manipulation of data" and, as a result, (a) the County may charge for the time spent redacting confidential information after receiving a ruling from the OAG that the information is confidential, and (b) the County may not charge for the time required to redact information subject to only discretionary exceptions found under the TPIA; (2) the task of converting electronic file formats meets the definition of manipulation of data such that the County may generally charge for the time necessary to convert the email communications to a .pst file and, although the County has not explained why

---

[4] Empower also asserted the trial court had jurisdiction over its declaratory-judgment action pursuant to § 37.004(a) of the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a).

–4–

it must convert the .pst files to a PDF, if it determines it must do so in order to redact confidential information, it may charge for that time; and (3) the County must conduct a sample test to determine the time necessary to convert the emails to a secondary .pst file and redact confidential information, which should be used to estimate the cost to respond. On December 4, 2019, after the OAG opinion issued, the County sent Empower another revised cost estimate for a total of $75, the cost of manipulation of the data: (1) to convert the email communications to .pst files; (2) to convert the .pst files containing confidential information into a secondary PDF file; and (3) to make required redactions.

On February 6, 2020, the County sent Empower a revised cost estimate waiving all charges and filed its first amended plea to the jurisdiction, arguing with respect to Empower's petition for mandamus that: (1) Empower had not brought a claim for which governmental immunity was waived because a dispute over the cost of making the information available cannot be converted into a refusal to make it available; and (2) Empower had no standing because its claims had been rendered moot by the County's waiver of the disputed fees. Empower responded to the plea to the jurisdiction arguing, among other things, that as a matter of law: (1) Empower has rejected the estimated charges for programming and manipulation so, under § 552.231(d)(2) of the TPIA, the County is required to make the public information available in some form that does not require programming or manipulation of the data; (2) saving .pst files to a secondary location and converting them to PDFs does

not qualify as programming or manipulation of data; (3) the TPIA does not distinguish "between a refusal to provide public information and a dispute over the cost of accessing that public information," and a local government's demand for unauthorized charges constitutes a refusal to provide the information for purposes of waiving governmental immunity; and (4) the existence of a cost dispute does not preclude Empower from filing its mandamus petition.

On February 26, 2020, after a hearing, the trial judge signed an order expressly granting the County's plea to the jurisdiction.[5] The parties did not request and the trial judge did not sign any written findings of fact and conclusions of law. After the trial judge signed the written order, Empower filed a motion to modify the judgment arguing new developments had occurred that demonstrated a dispute remained between the parties and judicial relief remained necessary. The County filed a response, and Empower's motion to modify the judgment was overruled by operation of law.[6]

## II. PLEA TO THE JURISDICTION

In issues one through three, Empower argues the trial court erred when it concluded it did not have subject-matter jurisdiction and granted the County's plea

---

[5] The parties agree the trial court granted the plea to the jurisdiction on the basis that Empower had not brought a claim for which governmental immunity had been waived because it dismissed the case with prejudice. *Compare Harris Cty. v. Sykes*, 136 S.W.3d 635, 640 (Tex. 2004) (holding that dismissal with prejudice based on plea to jurisdiction finally adjudicates whether claims asserted, or those that could have been asserted, come within waiver of immunity), *with Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex. 1999) (per curiam) (dismissal of case for mootness is not ruling on merits so it cannot be with prejudice).

[6] *See* TEX. R. APP. P. 33.1(b) (in civil case, overruling by operation of law of motion to modify preserves issue for appellate review, unless taking of evidence required).

to the jurisdiction because Empower brought a claim for which governmental immunity was waived. It argues that citizens have the right to inspect public information for free when they do not request to inspect it in a particular form and the County's attempt to charge fees to inspect that public information constituted a refusal to supply the requested information. The County responds that its actions did not constitute a refusal to provide the documents as a matter of law because Empower requested to inspect records that existed in an electronic medium and § 552.272 allows it to charge for programming and manipulation.

## A. Standard of Review

Whether a court has subject-matter jurisdiction is a question of law that an appellate court reviews de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Further, appellate courts review legal questions of statutory construction and interpretation de novo. *See Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 647 (Tex. 2020).

## B. Applicable Law

### 1. Governmental Immunity from Suit

Governmental immunity protects political subdivisions of the State, including counties, from suit unless the State consents. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (op. on reh'g). Governmental immunity from suit deprives the trial court of subject-matter jurisdiction over claims against governmental entities unless the party suing the governmental entity establishes the

State's consent to suit. *Rines v. City of Carrollton*, No. 05-15-01321-CV, 2018 WL 833367, at *5 (Tex. App.—Dallas Feb. 13, 2018, pet. denied) (mem. op.). Such consent to suit must generally be found in the actions of the legislature. *Id.* Any purported statutory waiver of immunity should be strictly construed in favor of retention of immunity. *See PHI, Inc. v. Juvenile Justice Dep't*, 593 S.W.3d 296, 303 (Tex. 2019). Therefore, a statute shall not be construed as a waiver of immunity unless the waiver is effected by clear and unambiguous language. *Rines*, 2018 WL 833367, at *5.

## 2. Plea to the Jurisdiction

Subject-matter jurisdiction is essential to the authority of the court to decide a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The purpose of a plea to the jurisdiction is to defeat a cause of action "without regard to whether the claims asserted have merit." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Because governmental immunity from suit defeats a trial court's jurisdiction, it may be raised in a plea to the jurisdiction. *Sykes*, 136 S.W.3d at 638.

The plaintiff bears the burden to plead facts affirmatively demonstrating that immunity has been waived and that the trial court has subject-matter jurisdiction. *See State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). A governmental entity's

–8–

plea to the jurisdiction can take two forms: (1) a challenge to the plaintiff's pleadings regarding its allegation of jurisdictional facts; or (2) an evidentiary challenge to the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 226–27. When the dispositive evidence presented with a plea to the jurisdiction is undisputed, the trial court may rule on the plea as a matter of law. *Byrdson Servs., LLC v. S.E. Tex. Reg'l Planning Comm'n*, 516 S.W.3d 483, 484–85 (Tex. 2016).

### 3. Public Information Act

The TPIA, which is in Chapter 552 of the Texas Government Code, guarantees access to public information, subject to certain exceptions. *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 114 (Tex. 2011); *see generally* GOV'T §§ 552.001–552.376. Its purpose is to provide accountability and transparency in government by establishing mechanisms to foster public access to government records. *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 57 (Tex. 2015). The TPIA shall be liberally construed in favor of granting a request for information. GOV'T § 552.001(b).

Chapter 552, Subchapter F, permits governmental entities to impose charges for the cost of copying records and, in certain circumstances, preparing them for inspection. *Id*. §§ 552.261 (charges for providing copies), 552.271 (charges for inspection of paper records), 552.272 (charges for inspection of electronic records); *City of Dallas v. Abbott*, 304 S.W.3d 380, 385 (Tex. 2010). A charge may not be imposed for the inspection of public information that exists in an electronic medium,

unless complying with the request requires programming or manipulation of data. GOV'T § 552.272(a). If programming or manipulation of data is required, the governmental body shall notify the requestor before assembling the information and provide an estimate of charges that will be imposed to make the information available. *Id.* §§ 552.272(a), 552.231(b).

On providing the written statement to the requestor, the governmental body does not have any further obligation to provide the information in the requested form or in the form in which it is available unless within 30 days the requestor states in writing to the governmental body that: (1) it accepts the costs set out in the statement or other terms to which the requestor and the governmental body have agreed; or (2) it wants the information in the form in which it is available. *See id.* § 552.231(d).

The Texas Administrative Code also contains provisions governing the cost of copying or making available for inspection public information, providing additional safeguards against excessive charges for copies. 1 TEX. ADMIN. CODE §§ 70.1–.13. In response to requests for inspection of public information that is not maintained in standard paper form, a governmental body may not charge the requesting party the cost of preparing and making available such information, unless complying with the request will require programming or manipulation of data. *See id.* § 70.5(b). If a governmental body receives a request requiring programming or manipulation of data, the governmental body should proceed in accordance with § 552.231 of the TPIA. *Id.* § 70.6(f).

The TPIA waives immunity and permits requestors to file suit for a writ of mandamus seeking to compel a governmental body to make information available for public inspection under two circumstances: (1) when a governmental body refuses to request an OAG decision under Subchapter G, GOV'T §§ 552.301–.309, on whether information is public; or (2) when the governmental body refuses to supply (a) public information or (b) information the OAG has determined is public information not excepted from disclosure under Subchapter C, *id*. §§ 552.101–.162, which relates to information excepted from required disclosure. *Id*. § 552.321(a). The TPIA does not define or otherwise qualify the word "refuses." *See id*. § 552.003 (definitions).

### C. *Application of the Law to the Facts*

In this appeal, we are asked to determine whether the undisputed jurisdictional facts demonstrate, as a matter of law, that the County's conditional compliance by notifying Empower of the estimated costs for producing the electronic documents for inspection, which Empower contends are illegal, constitutes a refusal under § 552.321(a) for purposes of waiving governmental immunity and conferring subject-matter jurisdiction on the trial court. Empower's argument essentially embodies three premises: (1) although the County may charge for programming and manipulation of data in order to provide information in a "requested form," Empower did not request to inspect the electronic information in a particular form; (2) the County conditionally complied with Empower's request by providing

–11–

estimated costs for "programming" or "manipulation" of data, but the proposed actions do not qualify as such; and (3) the estimated costs for programming and manipulation were illegal, and therefore, the County's conditional compliance constitutes a refusal to comply with Empower's request to inspect the electronic information, thereby waiving governmental immunity from suit. At the outset of our analysis, we note that we are mindful that the policy of strict construction in waiver of immunity cases is counterweighed by a strong policy of liberal construction favoring disclosure in TPIA cases. *Compare PHI, Inc.*, 593 S.W.3d at 303 (statutory waiver of sovereign immunity strictly construed in favor of immunity), *with* GOV'T § 552.001 (TPIA liberally construed in favor of granting request for information).

### 1. "Requested Form" of Electronic Information

First, we address Empower's contention that, although the County may charge for programming and manipulation of data in order to provide electronic information in a requested form under § 552.231, that section does not apply because Empower did not request to inspect the electronic information in a particular form. The record shows that after initially requesting copies of the information in digital form, Empower modified its request to seek inspection of the information and sought a formal estimate of costs for the preparation of redactions. In its August 26, 2019 letter, the County appears to understand Empower's "requested form" to be "a publicly accessible form" and explained:

The email communications [Empower] seek[s] exist[] in the individual Microsoft Outlook Files of each specified user, or personal storage table (.pst) files created by Microsoft outlook, which are **not available in a publicly accessible form as requested**. Items saved in a .pst file are available only on the computer where the file is saved, unless exported and transferred to a secondary file, which would then be converted to a PDF [], and thereafter made publicly accessible.

(Emphasis added.) In the OAG's November 21, 2019 opinion, it noted the County "explain[ed] that because the [email] communications are only accessible where the file is saved, [the] IT [department] will be required to convert the [email] communications to a secondary '.pst file' that is accessible to users other than the owner of the [email] address."

Sections 552.272(a) and 552.231(b) provide that, if programming or manipulation of data is required, the governmental body shall notify the requestor before assembling the information and provide an estimate of charges that will be imposed to make the information available. *Id.* §§ 552.272(a), 552.231(b); *see also* 1 ADMIN. § 70.6(f) (if governmental body receives request requiring programming or manipulation of data, governmental body should proceed in accordance with § 552.231 of TPIA). Section 552.231 provides more detailed guidance with respect to the estimated charges, stating in relevant part:

(a)     A governmental body shall provide to a requestor the written statement described by Subsection (b) if the governmental body determines:

(1)     that responding to a request for public information will require programming or manipulation of data; and

(2)     that:

–13–

. . . .

    (B)   the information could be made available in the **requested form** only at a cost that covers the programming and manipulation of data.

(b)   The written statement must include:

    (1)   a statement that the information is not available in the **requested form**;

    (2)   a description of the **form in which the information is available**;

    (3)   a description of any contract or services that would be required to provide the information in the **requested form**;

    (4)   a statement of the estimated cost of providing the information in the **requested form**, as determined in accordance with the rules established by the attorney general under Section 552.262; and

    (5)   a statement of the anticipated time required to provide the information in the **requested form**.

. . . .

(d)   On providing the written statement to the requestor as required by this section, the governmental body does not have any further obligation to provide the information in the **requested form** or in the **form in which it is available** unless within 30 days the requestor states in writing to the governmental body that the requestor:

    (1) wants the governmental body to provide the information in the **requested form** according to the cost and time parameters set out in the statement or according to other terms to which the requestor and the governmental body agree; or

    (2) wants the information in the **form in which it is available**.

GOV'T § 552.231 (emphasis added).

Without citation to authority, Empower suggests that the term "requested form" in § 552.231 refers to a request for electronic information in a specific file format and, therefore, if the requestor does not specify an electronic file format, then any format qualifies as "the form in which it is available." However, Empower's interpretation of the statute does not account for a situation, like this one, where there is no native form in which the electronic information is publicly available. If we were to accept Empower's interpretation, we would in effect render § 552.231 meaningless any time a savvy requestor chose not to specify a particular file format. *See Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014) (must not interpret statute in manner that renders any part meaningless or superfluous). Accordingly, based on this record, we conclude § 552.231 applied to Empower's request to inspect the electronic data.

## 2. Manipulation of Data

Second, we address Empower's contention that the County's conditional compliance with its request by providing estimated costs for "programming or manipulation of data" was improper because the County's proposed actions do not qualify as such programming or manipulation. We note that the OAG concluded the task of converting electronic file formats and the task of redacting confidential information from electronic information meet the definition of "manipulation" and in its December 4, 2019 letter, the County provided estimated costs only for the

"manipulation of data." Accordingly, we do not address whether these activities satisfy the statute's definition of "programming."

The TPIA defines "manipulation" as "the process of modifying, reordering, or decoding of information with human intervention." GOV'T § 552.003(2). *Black's Law Dictionary* defines "modify" as "[t]o make somewhat different; to make small changes to (something) by way of improvement, suitability, or effectiveness." *Modify*, BLACK'S LAW DICTIONARY (11th ed. 2019). The record shows that, in the OAG's November 21, 2019 opinion, the OAG agreed with the County that "the tasks [sic] of converting electronic file formats meets the definition of manipulation of data." In addition, the OAG concluded that the County (1) could charge for the task of converting the email communications to a secondary .pst file but (2) failed to demonstrate the remaining task of converting the .pst files to PDFs met the definition of manipulation of data because the County failed to explain why it was necessary to do so. In its December 4, 2019 letter, the County reduced its estimated costs and specified in part they were for converting email communications to a secondary .pst file. We agree with the OAG's interpretation. By its very nature, the conversion of the requested electronic communications into secondary .pst files is a process of modifying those files that falls within the definition of "manipulation." Accordingly, we conclude that converting email communications to a secondary .pst file qualifies as "manipulation of data" under the TPIA.

Further, we note that Empower's modified request clearly anticipated that its request encompassed confidential information and, as a result, there would be costs associated with redacting information. Also, the OAG determined that the task of redacting confidential information that exists in electronic form met the definition of "manipulation of data," and it stated that if the County determined the creation of a PDF was necessary for the purpose of redacting confidential information it could do so. And in the County's December 4, 2019 letter, it provided additional estimated costs for converting the .pst files with email communications that contained confidential information to PDFs and making required redactions. *See* GOV'T § 552.272(d) (when information created or kept in electronic form, governmental entity is encouraged to separate out confidential information and make public information available through electronic access through computer network or other means). The County was permitted to charge for the costs associated with redacting, including converting the files into a format conducive to redaction. *See* 1 ADMIN. § 76.3(d)(4) (permitting recovery of labor charge for redacting confidential information pursuant to mandatory exception).

### 3. Refusal to Supply Electronic Information for Inspection

Finally, we address Empower's principal contention—that the County's condition on compliance constitutes a refusal to supply the electronic information for inspection, thereby waiving governmental immunity from suit. We understand Empower's argument to be that conditioning disclosure on any amount of proposed

costs associated with inspection of public information is per se a refusal under § 552.231(a).

Because the TPIA does not define the term "refuses," the common, ordinary meaning of the term applies unless a contrary meaning is apparent from the statute's language or the common meaning would lead to absurd or nonsensical results. *See Harris Cty. Appraisal Dist.*, 519 S.W.3d at 121–22 (citing GOV'T § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.")). When ascertaining the meaning of a statute's undefined terms, appellate courts typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities. *Id.* at 129.

*Black's Law Dictionary* does not contain an entry for the term "refuses," but it does define "refusal" as "[t]he denial or rejection of something offered or demanded." *Refusal*, BLACK'S LAW DICTIONARY (11th ed. 2019). Also, *Merriam-Webster* defines "refuse" as "to show or express unwillingness to do or comply with." *Refuse*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/refuse (accessed May 4, 2022). Next, we consider the term's usage in court decisions. Case law has generally concluded that, for purposes of § 552.231, "refuses" means "to show or express a positive unwillingness to do or comply with." *See Houston Cmty. Coll. v. Hall Law Grp., PLLC*, No. 01-20-00673-CV, 2021 WL 2369505, at *7 (Tex. App.—Houston [1st Dist.] June 10, 2021, pet.

–18–

denied) (mem. op.); *City of Odessa v. AIM Media Tex., LLC*, No. 11-20-00229-CV, 2021 WL 1918968, at \*2 (Tex. App.—Eastland May 13, 2021, no pet.) (mem. op.); *City of Galveston v. CDM Smith, Inc.*, 470 S.W.3d 558, 572 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *City of El Paso v. Abbott*, 444 S.W.3d 315, 324 (Tex. App.—Austin 2014, pet. denied).

Empower points us to no authority standing for the proposition that the County's condition on compliance—estimated costs associated with inspection of public information—are a per se refusal under § 552.231(a). And our review of the case law addressing different factual scenarios that constitute a refusal under § 552.321 are not instructive because they do not make such a holding.[7] The only

---

[7] The case law seeking to determine the types of actions and omissions that will constitute a refusal under § 552.321(a) is sparse. Although the following seven decisions of our sister courts of appeals apply to § 552.321(a) to different factual scenarios, they merely show how different courts of appeals have applied the law to the facts of each particular case:

- In *Thomas v. Cornyn*, 71 S.W.3d 473 (Tex. App.—Austin 2002, no pet.), the Austin Court of Appeals broadly held that in a § 552.321 statutory mandamus action, a requesting party need show only that the governmental body has not complied with the TPIA in order to obtain mandamus relief. *Id.* at 484.

- In *Simmons v. Kuzmich*, 166 S.W.3d 342 (Tex. App.—Fort Worth 2005, no pet.), the Fort Worth Court of Appeals relied on *Thomas* and adopted the broad proposition that any failure to comply with the TPIA constituted a refusal such that statutory mandamus relief is available to the requestor. *Id.* at 348. Then, it specifically concluded that immunity is waived when a governmental body fails to timely notify the requestor of its decision to seek an OAG opinion because § 552.321(a) permits a suit for writ of mandamus when a governmental body refuses to request the OAG's opinion as provided by Subchapter G and that subchapter contains a timely-notice-to-the-requestor requirement. *Id.* at 347–48.

- In *Abbott*, the Austin Court of Appeals held the City of El Paso had conclusively proved it was not refusing to supply any information that the OAG had determined is public information because it showed that it had ultimately disclosed all unexcepted information in its possession and Abbott did not offer any controverting evidence. *Abbott*, 444 S.W.3d . at 325–27.

- In *CDM Smith, Inc.*, the Houston Fourteenth District Court of Appeals held the City of Galveston's cost estimate of $66,590 for producing or making the documents available did not reflect that it was unwilling to disclose the responsive information so it established, as a matter

–19–

case addressing similar facts is *CDM Smith*. But that case involved a different argument—the cost estimate for production or inspection was too high. *CDM Smith*, 470 S.W.3d at 572. Empower's contention that the County's conditional compliance constitutes a refusal as a matter of law is based on the premise that the estimated costs for inspection were unauthorized and amounted to a per se refusal, not that they were excessive.

We have already concluded that the County may charge for manipulation of data in order to provide the requested electronic information in a publicly accessible form and that the County's converting the email communications to a secondary .pst file qualifies as "manipulation of data" under the TPIA. The undisputed jurisdictional facts show that the County advised Empower that in order for it to

of law, that it did not refuse to supply the information and CDM Smith did not present evidence showing those costs were too high. *CDM Smith*, 470 S.W.3d at 570–72.

- In *Texas Tech University v. Dolcefino Communications, LLC*, 565 S.W.3d 442 (Tex. App.—Amarillo 2018, no pet.), the Amarillo Court of Appeals relied on *Abbott* for the proposition that the TPIA provides no guidance regarding the efforts a governmental body must take to locate, secure, or make available the public information requested, so the university's jurisdictional evidence showing it had informed Dolcefino that it did not have documents responsive to the request was some evidence it was not refusing to provide the public information and Dolcefino did not controvert this evidence, failing to raise a fact issue as to jurisdiction. *Id.* at 448–49.

- In *AIM Media*, the Eastland Court of Appeals concluded, based on the pleadings, that AIM Media had adequately pleaded a claim for mandamus relief under § 552.321 because it alleged the City of Odessa: (1) did not provide public criminal records in a timely manner as required by § 552.221(a); and (2) withheld basic information that should not have been withheld and redacted information that should not have been redacted contrary to the requirements of § 552.006. *AIM Media*, 2021 WL 1918968, at *3.

- In *Hall Law Group*, the Houston First District Court of Appeals held that the community college failed to establish, as a matter of law, that its failure to comply with the TPIA, including the provisions governing the suspension of deadlines during an epidemic, did not constitute a refusal under the TPIA. *Hall Law Grp.*, 2021 WL 2369505, at *1, 9, 13.

comply, manipulation of data and redaction of information were required. Based on the facts of this case, we conclude, as a matter of law, the County's conditional compliance by notifying Empower of the estimated costs for manipulation of data in order to redact and produce the electronic documents for inspection did not constitute a refusal to provide the requested information under § 552.321(a) for purposes of waiving governmental immunity.

Accordingly, we conclude the trial court did not err when it granted the County's plea to the jurisdiction. However, we are mindful of the fact that, in some cases, the estimated costs could be so exorbitant that they amount to a refusal under § 552.321(a) as a matter of law, thereby constituting a waiver of immunity, but that is not the situation in the case before us. *See McCulloch v. Maryland*, 17 U.S. 316, 327 (1819) ("An unlimited power to tax involves, necessarily, a power to destroy; because there is a limit beyond which no institution and no property can bear taxation.").

Issues one through three are decided against Empower.

### III. MOTION TO MODIFY THE JUDGMENT

Alternatively, in issues four and five, Empower argues the trial court erred when it overruled Empower's motion to modify the judgment[8] because: (1)

---

[8] Although Empower does not specify the trial court ruling it challenges in issues four and five, we construe these issues to challenge the trial court's overruling of Empower's motion to modify the judgment because Empower: (1) argues that "further developments" demonstrate the parties' dispute remains and judicial relief is necessary; and (2) provides record citations to its motion to modify the judgment and

–21–

Empower's claims were not rendered moot by the County's waiver of the disputed fees because it has still not inspected the requested information and this case is capable of repetition yet evading review, so Empower has standing to assert its claims; and (2) even if the case is moot, the trial court should have dismissed the case without prejudice. Also, Empower contends that if the case is determined to be moot, then it substantially prevailed and the case should be remanded to the trial court for a determination of attorney's fees under § 552.323 of the TPIA. We have already concluded the trial court did not err when it granted the plea to the jurisdiction based on immunity. Accordingly, we need not address issues four and five.

## IV. CONCLUSION

The trial court did not err when it granted the County's plea to the jurisdiction concluding it lacked subject-matter jurisdiction because Empower brought a claim for which governmental immunity was not waived.

The trial court's order granting the County's plea to the jurisdiction is affirmed.

/Leslie Osborne//
LESLIE OSBORNE
JUSTICE

200546f.p05

Schenck, J., dissenting

---

exhibits attached to that motion which are dated after the trial court granted the County's plea to the jurisdiction.

–22–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

EMPOWER TEXANS, INC.,
Appellant

No. 05-20-00546-CV          V.

DALLAS COUNTY, TEXAS,
Appellee

On Appeal from the 298th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-10268.
Opinion delivered by Justice
Osborne. Chief Justice Burns and
Justice Schenck participating.

In accordance with this Court's opinion of this date, the trial court's order is **AFFIRMED**.

It is **ORDERED** that appellee DALLAS COUNTY, TEXAS recover its costs of this appeal from appellant EMPOWER TEXANS, INC.

Judgment entered this 15th day of July 2022.